## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Boy Scouts of America and Delaware BSA, LLC,<br><br>                Debtors. | Civil Action No. 20-cv-00774 (RGA) |
| Century Indemnity Company,<br><br>             Appellant,<br><br>v.<br><br>Boy Scouts of America,<br><br>            Appellee<br><br>Delaware BSA, LLC<br><br>            Appellee | On appeal from the U.S. Bankruptcy Court for the District of Delaware<br><br>Bankruptcy Case No. 20-10343 (LSS)<br>Bankruptcy BAP No. 20-14 |

**MEMORANDUM IN SUPPORT OF MOTION OF**
**BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC**
**TO DISMISS INTERLOCUTORY APPEAL**

SIDLEY AUSTIN LLP
Jessica C. K. Boelter
William E. Curtin
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Email: jboelter@sidley.com

– and –

SIDLEY AUSTIN LLP
Thomas A. Labuda
Michael C. Andolina
Matthew E. Linder
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Email: tlabuda@sidley.com
        mandolina@sidley.com
        mlinder@sidley.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@mnat.com
        aremming@mnat.com
        emoats@mnat.com
        ptopper@mnat.com

*Attorneys for the Boy Scouts of America and Delaware BSA, LLC*

Dated: June 22, 2020
Wilmington, Delaware

2

## <u>TABLE OF CONTENTS</u>

BACKGROUND ........................................................................................................4

    I.      BSA's Bankruptcy Filing And Bar Date Motion ..................................4

    II.     The Bar Date Hearing And Bar Date Order ........................................6

    III.   Proceedings Following The Bar Date Order ........................................8

ARGUMENT ...........................................................................................................9

    I.      Century Lacks Standing To Appeal The Bar Date Order ...............10

    II.     Leave To Take An Interlocutory Appeal Should Be Denied .........12

         A.     The Bar Date Order Is Interlocutory. .......................................12

         B.     The Interlocutory Order Does Not Qualify For Appellate Review ......................13

             1.     There Is No Controlling Question Of Law On Which There Is Any Substantial Ground For Difference Of Opinion..........................14

             2.     An Interlocutory Appeal Will Delay The Litigation—Not Advance It.....16

    CONCLUSION.....................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*In re AE Liquidation, Inc.*,
   451 B.R. 343 (D. Del. 2011)...............................................................................13

*In re Allegheny Int'l, Inc.*,
   954 F.2d 167 (3d Cir. 1992)...............................................................................15

*In re Allied Nevada Gold Corp.*,
   725 F. App'x 144 (3d Cir.), *cert. denied sub nom. Tuttle v. Allied Nevada
   Gold Corp.*, 139 S. Ct. 481, 202 L. Ed. 2d 380 (2018), *reh'g denied*, 139 S.
   Ct. 952, 203 L. Ed. 2d 141 (2019) ......................................................................17

*In re Cable & Wireless USA, Inc.*,
   338 B.R. 609 (Bankr. D. Del. 2006) ...................................................................15

*In re Combustion Eng'g*,
   391 F.3d 190 (3d Cir. 2004), *as amended* (Feb. 23, 2005)...........................2, 10, 11

*In re Dykes*,
   10 F.3d 184 (3d Cir. 1993)..................................................................................10

*In re Energy Future Holdings Corp.*,
   949 F.3d 806 (3d Cir. 2020)............................................................................3, 12

*In re Hooker Invs., Inc.*,
   937 F.2d 833 (2d Cir. 1991)...............................................................................12

*Jalbert v. Price* (*In re F-Squared Inv. Mgmt. LLC*),
   No. AP 17-50698 (LSS), 2019 WL 1417464 (D. Del. Mar. 29, 2019) .................13

*Kane v. Johns-Manville Corp.*,
   843 F.2d 636 (2d Cir. 1988)...............................................................................10

*In re Lampe*,
   665 F.3d 506 (3d Cir. 2011)...............................................................................15

*In Re Magic Rests., Inc.*,
   202 B.R. 24 (D. Del. 1996).................................................................................3

*In re MK Lombard Grp. I, Ltd.*,
   301 B.R. 812 (Bankr. E.D. Pa. 2003) .................................................................15

*In re Old HB, Inc.*,
   525 B.R. 218 (S.D.N.Y. 2015)...........................................................................11

*In re Paragon Offshore PLC*,
   597 B.R. 748 (D. Del. 2019)..................................................................9, 10

*In re Paragon Offshore PLC*,
   No. AP 17-51882-CSS, 2020 WL 1815550 (D. Del. Apr. 9, 2020)..................13, 16

*Travelers Ins. Co. v. H.K. Porter Co., Inc.*,
   45 F.3d 737 (3d Cir. 1995)...........................................................................10

*In re Truong*,
   513 F.3d 91 (3d Cir. 2008).............................................................................13

*In re Urban Broad. Corp.*,
   401 F.3d 236 (4th Cir. 2005) .........................................................................10

*In re Weiand Auto. Indus.*,
   612 B.R. 824 (Bankr. D. Del. 2020) ..............................................................15

**Statutes and Rules**

11 U.S.C. § 502(a) ....................................................................................7, 14

11 U.S.C. § 502(b)(9) .....................................................................................1

28 U.S.C. § 158 ..........................................................................................9, 12

28 U.S.C. § 158(a)(1)......................................................................................12

28 U.S.C. § 158(a)(3)......................................................................................12

28 U.S.C. § 1292(b)...................................................................................13, 14

Fed. R. Bankr. P. 2002 .....................................................................................1

Fed. R. Bankr. P. 3003(c)(3).............................................................................1

Fed. R. Bankr. P. 8003(a)(1).............................................................................12

Fed. R. Bankr. P. 8004................................................................................3, 13

Fed. R. Bankr. P. 8004(a)(2)....................................................................8, 12, 13

Fed. R. Bankr. P. 8004(d).................................................................................13

Del. Bankr. L.R. 2002-1(e) ..............................................................................1

Del. Bankr. L.R. 3001-1...................................................................................1

Del. Bankr. L.R. 3003-1................................................................................................................1

Del. Bankr. L.R. 9006-1(c)(i) .......................................................................................................5

Boy Scouts of America and Delaware BSA, LLC (collectively, "BSA"), by and through their undersigned counsel, hereby move to dismiss the appeal of third-party Century Indemnity Company ("Century"), one of BSA's insurers, from the bankruptcy court's Order, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, (I) Establishing Deadlines for Filing Proofs of Claim, (II) Establishing the Form and Manner of Notice Thereof, (III) Approving Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Survivors, and (IV) Approving Confidentiality Procedures for Abuse Survivors (the "Bar Date Order"). Bankr. Dkt. 695.

On February 18, 2020 (the "Petition Date"), BSA filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. *See* Lead Case No. 20-10343 (LSS), Bankr. Dkt. 1. BSA had been named "in numerous lawsuits related to historical acts of sexual abuse in its programs." Bankr. Dkt. 4 at 3. Although BSA had attempted to resolve sexual abuse claims, piecemeal tort litigation across the country was financially unsustainable for the organization, and continuing the process risked "inconsistent judicial outcomes and inequitable treatment of victims." *Id.* at 6. BSA accordingly commenced these chapter 11 cases "to achieve dual objectives: (a) timely and equitably compensating victims of abuse in Scouting and (b) ensuring that the BSA emerges from bankruptcy with the ability to continue its vital charitable mission." *Id.* at 6-7.

Consistent with its objectives, BSA filed a motion requesting, among other things, that the bankruptcy court set a bar date—*i.e.*, a deadline for sexual abuse and other claimants to file proofs of claim against BSA. After months of extensive negotiations and consultation with experts, BSA submitted a proposed Claims Form for abuse survivors that appropriately balanced the need for information with the need to be sensitive to victims of child sexual abuse. Certain of BSA's insurers, including Century, objected. After a more than three-hour-long hearing at which

1

the bankruptcy court heard lengthy argument from the objecting insurers and took expert testimony, Judge Silverstein overruled the objections, including Century's, and entered the Bar Date Order.

True to its strategy to delay these proceedings as much as possible, derail BSA's efforts to equitably compensate victims of abuse, and put off the day it has to live up to its obligations under its policies, Century now has filed a notice of appeal of the Bar Date Order. Although difficult to discern from Century's one sentence description, Century appears to contend that the form of proof of claim for abuse claimants "was not properly before the court" because it was submitted after consultation and negotiation with various constituencies, including Century, and not with the original bar date motion; and the claim form should have included the extensive questions of sexual abuse claimants proposed by Century and rejected by the bankruptcy court as unnecessary and intrusive, particularly for sexual abuse survivors. Century's objections were meritless to begin with, and this appeal is improper and should be dismissed.

For two independent reasons, Century has no right to pursue this appeal. First, Century lacks appellate standing to challenge the Bar Date Order. A party has standing to appeal a bankruptcy court order only if it is "directly and adversely affected pecuniarily" by the order. *In re Combustion Eng'g*, 391 F.3d 190, 214 (3d Cir. 2004), *as amended* (Feb. 23, 2005) (internal citations omitted). This standard, which is much more stringent than the standard for standing in the bankruptcy court, "rests on the particularly acute need to limit appeals in bankruptcy proceedings, which often involve a myriad of parties indirectly affected by every bankruptcy court order." *Id.* at 215 (internal citation and quotation marks omitted). The Bar Date Order does not have any pecuniary effect on Century, but instead represents the first step in a claims process through which potential claimants may submit claims against BSA that could someday be

covered by Century's policies. Courts have rejected appellate standing for a debtor's insurers in analogous circumstances, and this Court should as well.

Second, Century has no right of appeal because the Bar Date Order is interlocutory. The Bar Date Order does not make any final determination as to any claim or substantive matter, but merely approves a process through which claims may be pursued. It is unsurprising, therefore, that the Third Circuit has held that bar date orders like this one are not final. *In re Energy Future Holdings Corp.*, 949 F.3d 806, 817 (3d Cir. 2020). Under Fed. R. Bankr. P. 8004, Century may appeal the interlocutory Bar Date Order only by filing a motion for leave to appeal—which it has not done. Because Century has not shown (and cannot show) that "exceptional circumstances" exist which justify the need for immediate review, *In Re Magic Rests., Inc.*, 202 B.R. 24, 26 (D. Del. 1996), leave to appeal should be denied, and the appeal should be dismissed.

All factors for determining whether an interlocutory bankruptcy court appeal is warranted militate against Century's appeal. In granting the Bar Date Order and approving the proof of claim form that BSA submitted, the bankruptcy court made factual findings and exercised its discretion in rejecting Century's request for more extensive questioning of sexual abuse claimants—which the bankruptcy court concluded would be too "intrusive." Bankr. Dkt. 675 at 122:5. The bankruptcy court's ruling expressly rested on expert testimony given live and under oath at the hearing, as well as the court's weighing of the competing interests presented by the various constituencies before it. The order thus presents no controlling question of law, much less one around which there could be any substantial grounds for difference of opinion. And if this appeal were permitted to proceed, it would not advance the termination of the litigation but—if anything—delay it. BSA has already taken extensive and costly steps, as required by the Bar Date Order, to notify the millions of potential sexual abuse claimants of their rights. To the

extent Century seeks to disrupt that process, it will not only prolong the litigation, but also risk harm for sexual abuse victims forced to relive their experiences a second time as they grapple with competing and conflicting claim forms. For this reason as well, the appeal should be dismissed.

**BACKGROUND**

I.     **BSA's Bankruptcy Filing And Bar Date Motion.**

On the Petition Date, BSA filed a motion requesting that the Bankruptcy Court (a) set a deadline for the filing of claims against BSA (the "Bar Date"), (b) establish the form and manner of notice to be given to potential claimants, and (c) approve procedures for providing notice to abuse victims. Bankr. Dkt. 18 (the "Bar Date Motion"). BSA emphasized the "critical importance" of receiving and analyzing abuse claims promptly so that the claims could be handled in an efficient and equitable manner. *Id.* ¶¶ 10-11. Sexual abuse survivors shared this goal: both the committee for tort claimants and BSA agreed that a bar date was necessary to allow the parties "to understand the body of claims that are out there" in order to "proceed with respect to the mediation" and ultimate resolution of claims and distributions to claimants under a confirmed plan of reorganization. Bankr. Dkt. 675 at 64:14-24.

BSA thus requested that a bar date be set, and proposed procedures for confidential submission of abuse claims. Bankr. Dkt. 18 ¶ 17, Exs. A, B-1, C-1, D. BSA indicated, however, that it intended to consult with the Tort Claimants' Committee and other constituents before submitting a proposed plan for giving notice to sexual abuse claimants, or a proposed proof of claim form that sexual abuse claimants would be required to submit. *Id.* ¶ 19. BSA took these additional steps in light of the fact that the claims involved sexual abuse—most of which had occurred decades earlier, before BSA had implemented more stringent practices to prevent abuse—as well as the nature of the evidence that would be relevant to these claims, and the

4

sensitivity around reaching out to potential sexual abuse claimants. As counsel for BSA explained at the hearing, the unique circumstances of this case required "an extraordinary effort for an extraordinary notice program." Bankr. Dkt. 675:31:25-32:1. BSA accordingly indicated that it would, well in advance of any bar date hearing, supplement the Bar Date Motion with a proposed Supplemental Notice Plan and Abuse Proof of Claim Form. Bankr. Dkt. 18 ¶ 19; *see also id.* ¶ 7g n.5.

BSA filed the promised supplement to the Bar Date Motion with the bankruptcy court on May 4, 2020. Bankr. Dkt. 557. Consistent with Bankruptcy Local Rule 9006-1(c), the supplemental filing was submitted 14 days prior to the May 18 hearing on the Bar Date Motion. BSA had also circulated its draft sexual abuse claim form to the insurers, including Century, even earlier—on April 19. Bankr. Dkt. 675 at 63:22-24. BSA proposed in the Bar Date Motion and Supplemental Notice Plan to send notice by first class mail to more than one thousand known claimants, plus email notifications "anticipated to reach over 10 million potential claimants," including current and former Scouts, parents, and volunteers. Bankr. Dkt. 557-1 ¶ 3. To further reach unknown claimants, BSA proposed to engage in an extensive media program, "estimated to reach approximately 95.9% of Men 50+ . . . , the primary target audience of potential claimants, with an average frequency of 6.5 times in the United States." Bankr. Dkt. 557-1 ¶ 4. The total estimated cost of this "extraordinary" notice plan was $6.8 million. Bankr. Dkt. 556 ¶ 5. The supplement to BSA's Bar Date Motion also included a proposed Abuse Survivor Proof of Claim Form, Bankr. Dkt. 557-9, as well as proposed notices directed to abuse survivors, Bankr. Dkt. 557-6, 557-7, 557-8.

On May 11, the Tort Claimants' Committee submitted an objection to BSA's Bar Date Motion. Bankr. Dkt. 601. Among other things, the Tort Claimants' Committee challenged

various aspects of BSA's proposed Abuse Survivor Proof of Claim Form, and submitted an alternate proposed form. *Id.* at 6-8 & Ex. A. Three days later, after discussions with the Tort Claimants' Committee and other constituencies, BSA filed a revised Sexual Abuse Survivor Proof of Claim Form (the "Claim Form"). Bankr. Dkt. 630-1 ¶ 11 (noting that BSA had "substantially revised the Sexual Abuse Survivor Proof of Claim Form in an effort to resolve many of the Tort Claimants' Committee's objections, while also taking into account the informal comments of certain other constituencies, including the Debtors' insurers and the Local Council Committee"); *see also* Bankr. Dkt. 632-2 Ex. 7 (revised form). The next day, on May 15, 2020, three of BSA's insurers—including Century, the appellant here—filed objections to the claim forms. Bankr. Dkt. 651 (Hartford), 656 (Century), 659 (Allianz). Century complained that BSA's proposed Claim Form was "not properly before the Court" because it had not been attached to BSA's original Bar Date Motion, filed in February, but instead had been submitted as a supplement on May 4. Bankr. Dkt. 656 at 1-2.[1] Century also challenged the content of the proposed Claim Form, arguing that if the Claim Form were to be used as a proof of a sexual abuse survivor's claim against BSA, then the form would need "[f]ar more detailed questions and documentary support … to satisfy the requirements of the bankruptcy code." Bankr. Dkt. 656 at 1, 6.

## II.   The Bar Date Hearing And Bar Date Order.

The Bar Date Order and the Claim Form were negotiated at length throughout the days leading up to the Bar Date Hearing, which was scheduled for May 18, 2020. *See* Bankr. Dkt. 675 at 31:12-32:1. BSA submitted another revised Claim Form, which resolved most of the

---

[1] Century also complained that the Court should not resolve the Bar Date Motion because it had been prepared by Sidley, which Century was at that time attempting to disqualify from representing BSA due to purported conflict. Bankr. Dkt. 426. The bankruptcy court rejected Century's arguments with respect to disqualification of Sidley as BSA's bankruptcy counsel and overruled Century's objection to the retention of Sidley in these cases. Bankr. Dkt. 755.

objections, early on the morning of the Bar Date Hearing. Bankr. Dkt. 667. As relevant here, only three of Century's objections remained to be addressed at the hearing.

First, Century reiterated its position that the Claim Form should not be considered at all because it had not been attached to BSA's initial Bar Date Motion filed in February. Bankr. Dkt. 675 at 54:24-55:8. The Court rejected this argument, and fully heard the parties' views on the Claim Form. *See id.* at 61:3-5.

Second, Century argued that the Claim Form should not be used as a proof of claim within the meaning of 11 U.S.C. § 502(a), which states that when a proof of claim is filed, it "is deemed allowed, unless a party in interest … objects." Instead of constituting *prima facie* proof of a claim as § 502(a) provides, Century argued that submitted claim forms should be used solely "to preserve claims for voting purposes and to collect information for mediation." Bankr. Dkt. 675 at 58:12-16. The Court rejected this position as contrary to the terms of § 502(a): "I'm going to permit a proof of claim form to go out and the return of that proof of claim form has the effect that the code gives it. I am not going to alter the effects that the code gives it." *Id.* at 70:2-6.

Finally, Century and the other insurers argued that more questions should be included on the Claim Form. They asked, for example, that claimants be required to "identify by name and address, all the schools they attended to the best of their recollection, beginning with elementary school and continuing to secondary school and post-secondary school," Bankr. Dkt. 675 at 107:19-22; "all of their employment history dates … for each job and location," *id.* at 108:16-18; and "if they suffered other unrelated forms of abuse, unrelated to Boy Scouts," *id.* at 109:14-17. Counsel for BSA and the Tort Claimants' Committee responded that even if this information might be "helpful" to the insurers, the value of the information had to be balanced against the extreme "sensitivities" associated with posing such extensive questions to sexual abuse

claimants. *Id.* at 112:18-24, 114:9-17, 118:11-13. And the Tort Claimants Committee's expert, Jon Conte, provided testimony that sexual abuse claimants could be harmed by being compelled to answer extensive narrative questions—which, Mr. Conte explained, would not even make it possible to discern whether a claim was valid or not—and opined that it was "much better" to request more limited information at the outset with further questioning later as appropriate. *Id.* at 20:7-21, 24:12-25:12.

The bankruptcy court, expressly crediting Mr. Conte's testimony, declined to order the additional questions sought by Century and the other insurers. Bankr. Dkt. 675 at 121:12-122:9. The court explained, "I don't know that more information is better and I do have a concern that the more intrusive the information is … , it will discourage parties, abuse victims, from coming forward and we don't want to do that. So I'm not going to require that additional information." *Id.* at 122:3-9. The bankruptcy court on May 26, 2020 issued the Bar Date Order, which approved the proposed Claim Form without Century's additional questions, as well as the related noticing procedures including the Supplemental Notice Plan. Bankr. Dkt. 695.

## III.   Proceedings Following The Bar Date Order.

Thirteen days later, on June 8, 2020, Century filed a notice of appeal from the bankruptcy court's Bar Date Order. Bankr. Dkt. 803. The notice states that the Bar Date Order "approved a form proof of claim for abuse claimants, as proposed by the Boy Scouts of America and objected to by Century, that was not properly before the court and was not designed to elicit sufficient information to establish the prima facie validity of claims." *Id.* at 1. Century did not file any accompanying motion for leave to appeal. *See* Fed. R. Bankr. P. 8004(a)(2). None of the other insurers who had submitted objections to the Claim Form appealed.

Despite appealing the Bar Date Order, Century made no attempt to stay that order. This means that the multimillion-dollar notification process for sexual abuse claimants that the Bar

Date Order mandates has proceeded—even as Century purports to challenge the Claim Form that has been and continues to be distributed to millions of potential claimants. *See* Bankr. Dkt 695 ¶¶ 4(a), 14-18. As required by the Bar Date Order, BSA has already sent the court-approved notice and Claim Form to thousands of potential known sexual abuse claimants by first class mail. Declaration of Katie Nownes ¶ 3 ("Nownes Decl."). As further required by the Bar Date Order, BSA has emailed the court-approved notice and Claim Form to another six million parties, including current and former Scouts, volunteers, and parents, and email notices will be sent to at least three million additional parties by June 27. 2020. *Id*. By waiting 13 days to file its notice of appeal and failing to seek any form of stay, Century has ensured that the mail and email notification process will be complete before its appeal even begins.

Beyond these directed notifications, the Bar Date Order also requires publication notice to unknown claimants. Bankr. Dkt. 695 ¶ 17. Pursuant to the order, BSA has retained a media vendor to produce print, television, and radio advertisements, all of which are well underway. Nownes Decl. ¶ 4. Consistent with the bankruptcy court's order, the advertisements will run from August 31 through mid-October. *Id*. This activity, too, has continued and will continue as required by the Bar Date Order and Supplemental Notice Plan while Century's appeal is pending.

## ARGUMENT

This Court should dismiss Century's meritless appeal because Century had no right to file it. Because the Bar Date Order is merely the first step in the claims process, which in this case will likely involve the establishment of a trust as part of BSA's plan of reorganization to handle, administer, liquidate, and make distributions with respect to all sexual abuse claims, the Bar Date Order has no direct pecuniary effect on Century. Century therefore lacks standing to appeal. For the same reason, the order is interlocutory, which means that 28 U.S.C. § 158 gives Century no

right of appeal. And the factors that determine when an interlocutory appeal is called for uniformly weigh against this proceeding. The appeal should be dismissed.

## I.   Century Lacks Standing To Appeal The Bar Date Order.

Appellate standing is a prerequisite to pursuing an appeal from a bankruptcy order. *In re Paragon Offshore PLC*, 597 B.R. 748, 756 (D. Del. 2019) (citing *In re Richardson Indus. Contractors, Inc.*, 189 Fed. App'x 91 (3d Cir. 2006)). To have appellate standing, the would-be appellant must demonstrate that it is a "person aggrieved." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004), *as amended* (Feb. 23, 2005). Specifically, the appellant must be "directly and adversely affected pecuniarily" by the bankruptcy court order. *Id.* Thus, to appeal from a bankruptcy court order, the appellant must "show that the order diminishes one's property, increases one's burdens or impairs one's rights." *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993).

Notably, the standard for *appellate* standing in bankruptcy is significantly more restrictive than standing to object in the bankruptcy court. Even those who "may be exposed to some potential harm incident to the bankruptcy court's order, are not directly affected by that order" as necessary to have appellate standing. *Travelers Ins. Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737, 741 (3d Cir. 1995). This "more stringent appellate standing requirement rests on the 'particularly acute' need to limit appeals in bankruptcy proceedings, which often involve a 'myriad of parties . . . indirectly affected by every bankruptcy court order[.]'" *Combustion Eng'g*, 391 F.3d at 215 (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988)). Decisions "reflect the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kane*, 843 F.2d at 642. Thus, "whether an appellant has objected to an order or attended a hearing" in the bankruptcy court is of no

moment in determining whether appellate standing exists. *In re Urban Broad. Corp.*, 401 F.3d 236, 244 (4th Cir. 2005); *see also Paragon Offshore PLC*, 597 B.R. at 757 (although equity holder "clearly had standing to appear and be heard" in the bankruptcy court, it was not a "person aggrieved" with standing to appeal the confirmation order).

Century cannot satisfy the stringent requirements for appellate standing here. The order does not diminish Century's property, increase Century's burdens, or impair Century's rights, but instead sets forth a process for *potential* claims against BSA to be filed which *may* be covered by Century's policies. The court rejected appellate standing in analogous circumstances in *In re Old HB, Inc.*, 525 B.R. 218 (S.D.N.Y. 2015). There, the court held that the debtors' insurer did not have standing to appeal entry of a bar date order that provided a new bar date to a group of claimants with potential claims against the debtors that might be covered by the insurer's policy. The court found that "[t]he problem with [the insurer]'s alleged harms is that they are all speculative or too many steps removed from the" new bar date order. *Id.* at 225. The insurer argued that it would be harmed under the new bar date order because "*if a claim is filed*, [the insurer] w[ould] have to defend against it or else permit entry of a default judgment." *Id.* (emphasis in original; citation and internal quotation marks omitted). But "the aggrieved person standard requires more than simply speculative future harm. Standing to appeal from a bankruptcy order requires that the party seeking to appeal demonstrate *actual* injury, and that such injury be financial and a *direct* result of the Court's order." *Id.* (emphasis in original). The insurer could make no such showing. *Id.*

Nor can Century. Whatever claims are submitted using the Claim Form approved in the Bar Date Order remain subject to objection. *See Combustion Eng'g*, 391 F.3d at 217 (no appellate standing for insurers because insurers "may still dispute coverage under specific

policies, and may raise any of the same challenges or defense to the payment of claims available pre-petition"). Century's prepetition rights with respect to its policies have not been altered by the Bar Date Order. Century is not obligated to pay amounts exceeding its prepetition policy limit and it maintains the right to dispute coverage. Century has not been harmed by the bankruptcy court's approval of a procedural claims process or a particular Claim Form. Indeed, as opposed to other parts of the chapter 11 process—such as the plan of reorganization, which is substantive and may impact the rights of parties in interest more broadly—the only parties *directly* affected by the Claim Form are the sexual abuse claimants themselves, which Century is not.

## II.    Leave To Take An Interlocutory Appeal Should Be Denied.

### A.    The Bar Date Order Is Interlocutory.

For much the same reason that Century lacks standing, it lacks any right to appeal because the Bar Date Order is not a final order. Under 28 U.S.C § 158, the district court "shall have jurisdiction to hear appeals * * * from final judgments, orders, and decrees," and "***with leave of court***, from other interlocutory orders and decrees" entered by the bankruptcy court. 28 U.S.C. § 158(a)(1), (a)(3) (emphasis added). Under the bankruptcy rules, to appeal from a final judgment under 28 U.S.C. § 158(a)(1), a party need only file a notice of appeal. Fed. R. Bankr. P. 8003(a)(1). But, "[t]o appeal from an interlocutory order or decree of a bankruptcy court under 28 U.S.C. § 158(a)(3)," a party must file a notice of appeal, which "***must*** * * * be accompanied by a motion for leave to appeal." Fed. R. Bankr. P. 8004(a)(2) (emphasis added).

There can be no doubt that the Bar Date Order is interlocutory. The Third Circuit addressed this very question earlier this year, holding that bar date orders entered by the bankruptcy court "were not final and appealable," but instead "initiated a procedural sequence." *Energy Future Holdings*, 949 F.3d at 817; *see also In re Hooker Invs., Inc.*, 937 F.2d 833, 836–

12

37 (2d Cir. 1991) ("Presenting a creditor with the choice of asserting or forgoing assertion of a claim cannot be said to constitute a final determination."). And the absence of finality is particularly obvious here, where Century evidently intends to challenge only the particular Claim Form that the bankruptcy court approved. *See* Bankr. Dkt. 803 at 1. Submission of the Claim Form is just the first step to liquidating a claim—and even if the Claim Form does not, as Century asserts, "elicit sufficient information," Bankr. Dkt. 803 at 1, more information can be gathered later during the normal course of the claims process. Plainly, an order approving the Claim Form does not "end[] the litigation on the merits and leave[] nothing more for the court to do but execute the judgment." *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (quoting *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)) (internal quotation marks omitted).

Because the bankruptcy court's order is not final, Century was required under Rule 8004 to submit a motion for leave to appeal with its notice of appeal. Fed. R. Bankr. P. 8004(a)(2). It failed to do so. Given Century's failure to identify a sound basis—or any basis at all—for allowing this interlocutory appeal, the Court is free to and should deny leave, and dismiss the appeal. *See* Fed. R. Bankr. P. 8004(d).

### B. The Interlocutory Order Does Not Qualify For Appellate Review.

The appeal should also be dismissed because Century cannot remotely carry the heavy burden of demonstrating that an immediate appeal is warranted here. Indeed, all applicable factors weigh strongly against permitting Century's meritless appeal.

In determining when a district court should grant leave to appeal an interlocutory bankruptcy court order, courts apply the standards set out in 28 U.S.C. § 1292(b). *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011); *In re Paragon Offshore PLC*, No. AP 17-51882-CSS, 2020 WL 1815550, at *2 (D. Del. Apr. 9, 2020). Under 28 U.S.C. § 1292(b), "an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question

of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation." *Jalbert v. Price* (*In re F-Squared Inv. Mgmt. LLC*), No. AP 17-50698 (LSS), 2019 WL 1417464, at *4 (D. Del. Mar. 29, 2019). Additionally, the would-be appellant must "establish[] exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *Id.* (citing *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989)). Century's appeal does not satisfy any of the prongs of the § 1292(b) test.

### 1.    There Is No Controlling Question Of Law On Which There Is Any Substantial Ground For Difference Of Opinion.

In the absence of a motion for leave to appeal, it is not clear which of the three objections it raised in the bankruptcy court Century intends to pursue on appeal. But it is clear that none presents controlling or difficult questions of law.

First, there can be no serious contention that the bankruptcy court committed reversible legal error by rejecting Century's request that the Claim Form not be considered because it was not attached to BSA's initial Bar Date Motion. BSA expressly indicated in the Bar Date Motion that a claim form would be proposed in a later supplement because it recognized the sensitivity with which the claim form would have to be drafted, given the nature of the claims at issue. Bankr. Dkt. 18 ¶¶ 7(g) n.5, 19. It timely filed the supplement 14 days before the hearing on the Bar Date Motion. *See* Del. Bankr. Local R. 9006-1(c)(i). Moreover, BSA sent the proposed draft claim form to Century on *April 19, 2020*, prior to the public filing of the supplement on May 4, and almost one month prior to the hearing on the Bar Date Motion. Bankr. Dkt. 675 at 63:21-25. BSA also had multiple conversations with the insurers before the hearing regarding concerns as to the claim form. *Id.* at 64:1-12. Century thus had ample opportunity to review and object to the

14

Claim Form. The bankruptcy court's decision to manage its docket by allowing this procedure was well within its discretion.

Equally meritless was Century's assertion that submitted Claim Forms should not be deemed *prima facie* proof of claims. *Supra* at 6-7. As the bankruptcy court made clear, this position is squarely contradicted by the text of § 502(a), which dictates the treatment of proofs of claim. Bankr. Dkt. 675 at 70:2-6; 11 U.S.C. § 502(a) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects."). There can be no "difference of opinion" as to the words of the statute. *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (explaining that based on section 502 and Rule 3001 "a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward"); *In re Lampe*, 665 F.3d 506, 515 (3d Cir. 2011).

Finally, the bankruptcy court's decision to deny Century's request for more extensive questions on the Claim Form presents no question of law at all, much less a controlling one on which there may be a difference of opinion. As the bankruptcy court made clear, its ruling as to the proposed additional questions was a factual determination, based in part on Mr. Conte's expert testimony, that (1) the questions included in BSA's proposed Claim Form provided sufficient information; and (2) the additional questions proposed by Century were not "relevant" to assessing the claims and were outweighed by the potential harm that such "intrusive" questions could cause survivors of child sexual abuse. Bankr. Dkt. 675 at 121:12-122:9. This was not a standard proof of claim form, but a particularized document, that was heavily vetted, revised, and tailored to meet the specific needs of the constituencies before the bankruptcy court and the sensitivities related to victims of sexual abuse. This factual, case-specific question—how to draft a form so as to elicit as much relevant information as possible without victimizing

15

potential claimants—presents no controlling question of law, but rather reflects the bankruptcy's factual findings and its proper exercise of discretion in weighing competing interests of the various constituencies. *See, e.g.*, *In re Weiand Auto. Indus.*, 612 B.R. 824, 850 (Bankr. D. Del. 2020); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 613 (Bankr. D. Del. 2006); *In re MK Lombard Grp. I, Ltd.*, 301 B.R. 812, 816 (Bankr. E.D. Pa. 2003). Put differently, the bankruptcy court's order approving the particular questions included on the Claim Form is grounded in the unique facts and circumstances of this case—not any significant or urgent legal question that warrants immediate review.

### 2.     An Interlocutory Appeal Will Delay The Litigation—Not Advance It.

Century likewise cannot establish that hearing this appeal would "materially advance the ultimate termination of the litigation." To the contrary, entertaining the appeal would inject further delay into these proceedings—a consideration that strongly supports dismissal. *Paragon Offshore PLC*, 2020 WL 1815550, at *3 (courts place "particular weight" on the question of whether an immediate appeal will materially advance the litigation) (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 531 (S.D.N.Y. 2014)).

The notice procedures set forth in the Bar Date Order are already substantially complete, and the Claim Form that Century challenges has already been sent to millions of potential claimants. To the extent Century intends to request that a different Claim Form be distributed, it risks imposing massive delay and severe harms. For one, any order requiring that the notice process be started anew would require delaying the Bar Date, because a new noticing plan could not be completed sufficiently far in advance of the currently set Bar Date of November 16. And the harms flowing from any such order would be severe. It would require much of the $6.8 million cost of the notice plan to be incurred a second time, s*ee* Bankr. Dkt. 556 ¶ 5, and even worse, risk imposing trauma on the sexual abuse claimants who have already received and

completed the existing Claim Form. As Mr. Conte testified, asking sexual abuse victims to "describe the intimate details" of sexual abuse is "extremely difficult," and risks them "getting triggered." Bankr. Dkt. 675 at 18:1-11. There can be no plausible justification for imposing such a request a second time.

In this respect, it is notable that Century has made no attempt to stay the Bar Date Order while it pursues this appeal. Due to Century's lack of diligence—waiting some 13 days to appeal, and failing to seek any stay—the notice program provided for in the Bar Date Order is already far along and will be all but complete before this appeal can be resolved. The Third Circuit has repeatedly held that it is appropriate to decline to hear appeals—even when the appellant could appeal *as of right*—where the appellant's failure to seek a stay makes relief impractical. *See In re Allied Nevada Gold Corp.*, 725 F. App'x 144, 150 (3d Cir.), *cert. denied sub nom. Tuttle v. Allied Nevada Gold Corp.*, 139 S. Ct. 481, 202 L. Ed. 2d 380 (2018), *reh'g denied*, 139 S. Ct. 952, 203 L. Ed. 2d 141 (2019) ("Moreover, and of high significance, the Appellants did not timely seek or obtain a stay."); *Nordhoff Invs.*, 258 F.3d 180, 186-87 (3d Cir. 2001) (the failure of an appellant to seek a stay "weighs heavily in favor of dismissing Appellants' claims" under the doctrine of equitable mootness). For this reason as well, Century should be denied leave to appeal, and the appeal should be dismissed.

## CONCLUSION

For the foregoing reasons, BSA respectfully requests that the Court dismiss the appeal.

Respectfully submitted this 22nd day of June 2020.

By: */s/ Eric W. Moats*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Eric W. Moats (No. 6441)
Paige N. Topper (No. 6470)
Morris, Nichols, Arsht & Tunnell
LLP 1201 North Market Street, 16th
Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Email:
dabbott@mnat.com
aremming@mnat.com
emoats@mnat.com
ptopper@mnat.com

-and-

SIDLEY AUSTIN LLP
Jessica C. K. Boelter
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Email: jboelter@sidley.com

-and-

SIDLEY AUSTIN LLP
Thomas A. Labuda
Michael C. Andolina
Matthew E. Linder
One South Dearborn Street
Chicago, Illinois 60603
Telephone: (312) 853-7000
Email: tlabuda@sidley.com
mandolina@sidley.com
mlinder@sidley.com

*Attorneys for the Boy Scouts of America and
Delaware BSA, LLC*