**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, | : | |
| Debtors. | : | Civil Action No. 20-cv-00774 (RGA) |
| | : | |
| | : | |
| CENTURY INDEMNITY COMPANY, | : | |
| Appellant, | : | On appeal from the U.S. Bankruptcy Court for the District of Delaware |
| v. | : | Bankruptcy Case No. 20-10343 (LSS) |
| BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, | : | Bankruptcy BAP No. 20-13 |
| Appellees. | : | |
| | : | |

## CENTURY'S OPPOSITION TO BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC'S MOTION TO DISMISS APPEAL

**O'MELVENY & MYERS LLP**
Jonathan Hacker
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
jhacker@omm.com

**O'MELVENY & MYERS LLP**
Tancred Schiavoni
Janine Panchok-Berry
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
tschiavoni@omm.com
jpanchok-berry@omm.com

**STAMOULIS & WEINBLATT LLC**
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, Delaware 19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
stamoulis@swdelaw.com

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*

1

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 6

    I.      CENTURY HAS STANDING TO APPEAL THE BAR DATE ORDER ............ 7

    II.     THE BAR DATE ORDER IS ARGUABLY FINAL ........................................ 10

    III.    THE COURT SHOULD GRANT LEAVE TO APPEAL UNDER
          § 158(a)(3) ...................................................................................................... 14

CONCLUSION ........................................................................................................ 18

**Cases**

*In re 2715 N. Milwaukee L.L.C.*,
422 B.R. 675 (Bankr. N.D. Ill. 2010) .................................................. 11

*In re A.H. Robins Co., Inc.*,
862 F.2d 1092 (4th Cir. 1988) ........................................................... 16

*In re Allegheny, Int'l, Inc.*,
954 F.3d 167 (3d Cir. 1992) ............................................................. 15

*In re Armstrong World Indus., Inc.*,
432 F.3d 507 (3d Cir. 2005) ........................................................ 14, 17

*In re Combustion Engineering, Inc.*,
391 F.3d 190 (3d Cir. 2004) .............................................................. 7

*In re Congoleum*,
426 F.3d 625 (3d Cir. 2005) ........................................................... 7, 8

*In re DuPage Boiler Works, Inc.*,
965 F.2d 296 (7th Cir.1992) ............................................................... 7

*In re Energy Future Holdings, Corp.*,
949 F.3d 806 (3d Cir. 2020) ................................................. 2, 11, 12, 13

*In re Flintkote Co.*,
471 B.R. 95 (D. Del. 2012) .............................................................. 15

*In re Fondiller*,
707 F.2d 441 (9th Cir. 1983) ............................................................. 7

*In re Holm*,
931 F.3d 620 (3d Cir. 1991) ............................................................. 16

*In re Hooker Invs., Inc.*,
937 F.2d 833 (2d Cir. 1991) ............................................................. 11

*In re Loefgren*,
305 B.R. 288 (W.D. Wis.), *aff'd*, 85 F. App'x 522 (7th Cir. 2003) ........................ 11

*In re Nortel Networks, Inc.*,
469 B.R. 478 (Bankr. D. Del. 2012) ..................................................... 16

*In re Old HB, Inc.*,
525 B.R. 218 (S.D.N.Y. 2015) ........................................................... 10

**Page(s)**

*In re STN Enters., Inc.*,
    99 B.R. 218 (D. Vt. 1988) ................................................................................. 11

*In re Wijewickrama*,
    2018 WL 2212983 (W.D.N.C. 2018) .......................................................... 11, 14

*Maressa v. A.H. Robins Co.*,
    839 F.2d 220 (4th Cir. 1988) ........................................................................ 11

*Ritzen Group, Inc. v. Jackson Masonry, LLC*,
    140 S. Ct. 582 (2020) ............................................................................... 11, 12

**Statutes**

28 U.S.C. § 158(a) ........................................................................................ 15, 16

# INTRODUCTION

Century Indemnity Company ("Century") has appealed the bankruptcy court's "Bar Date Order" issued May 26, 2020. Lead Case No. 20-10343 (LSS), Bankr. Dkt. 695. Debtors Boy Scouts of America and Delaware BSA, LLC (together, "BSA") have moved to dismiss the appeal, inexplicably complaining that Century's appeal seeks only to delay resolution of BSA's bankruptcy and satisfaction of tort claims that have been and will be asserted against BSA. Yet BSA admits that Century has not sought a stay of the bankruptcy proceedings, and Century likewise has not sought to adjourn merits briefing in its appeal while BSA's motion is resolved.

Century has not taken any such measures because it does not seek delay of the bankruptcy proceedings at all. Century's appeal will focus on the Bar Date Order's error in giving proofs of claim substantive, burden-shifting effect, which will directly and severely prejudice Century's rights by precluding a fair resolution of sexual-assault claims against BSA. Given that prejudice, Century unquestionably has standing to appeal the Order, and correcting it now will avoid the prejudice, without affecting ongoing proceedings or postponing the current Bar Date. Relief can be granted here by a simple order that the claims submitted through the Form approved in the Order will not be considered prima facie valid—such a remedy would not cause delay, postpone the bar date, or require BSA to initiate a second notice program.

Indeed, adjudicating this appeal now would *facilitate* prompt final confirmation of a reorganization plan by ensuring that the proofs of claim are treated properly up front. By contrast, treating the Bar Date Order as non-final, as BSA urges, would necessarily delay final resolution by postponing the disposition of Century's objections until the conclusion of the entire case, when the plan likely would need to be completely unwound if Century's objections to the proof of claim forms are sustained.

That much said, however, Century acknowledges that it is not entirely clear whether the Bar Date Order formally qualifies as final for purposes of appeal under 28 U.S.C. § 158(a)(1). BSA cites one Third Circuit precedent holding that the Bar Date Order in that case was non-final under § 158(a). *See In re Energy Future Holdings Corp.*, 949 F.3d 806, 817 (3d Cir. 2020). But that precedent can be distinguished, creating a material risk that if Century did not appeal the Bar Date Order now, but sought to raise its objections only after plan confirmation, BSA would argue that *this* Bar Date Order was final, making Century's later appeal untimely. That kind of forfeiture is exactly what the debtors asserted in *Energy Future Holdings* and in the Supreme Court precedent it applied.

By appealing now, Century avoids the risk of similar forfeiture here. If the Court rules that the Bar Date Order is non-final under § 158(a)(1), and that no discretionary appeal is appropriate under § 158(a)(3), Century will take its appeal in the normal course at the conclusion of the case. There are compelling reasons to permit the appeal now.

## BACKGROUND

On February 8, 2029, BSA filed its motion that resulted in the Order that is the subject of this appeal (the "Bar Date Motion").[1] Bankr. Dkt. 18. By this motion, BSA asked the bankruptcy court to approve the setting of a bar date for tort claims and the noticing procedures for advising the public of the bar date. *Id.* ¶ 7. While BSA proposed a "model Proof of Claim form for holders of Abuse Claims (the 'Abuse Proof of Claim Form')," the Motion included no such form. *Id.* ¶ 7(g).

---

[1] The Motion was formally styled *Debtors' Motion, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e), 3001-1, and 3003-1, for Authority to (I) Establish Deadlines for Filing Proofs of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve Procedures for Providing Notice of Bar Date and Other Important Information to Abuse Victims, and (IV) Approve Confidentiality Procedures for Abuse Victims.*

Though no Abuse Proof of Claim Form was exhibited to the Bar Date Motion, BSA promised that the form of proof of claim employed would "request[] important information relating to the Abuse Claims . . . which will assist the Debtors and parties in interest in evaluating and resolving the Abuse Claims." *Id.* ¶ 36. BSA further insisted that "obtaining this information will be essential to moving forward on a path of resolution in these chapter 11 cases," whether through settlement of the claims or otherwise. *Id.*

BSA informally circulated a draft Proof of Claim Form in April,[2] but it did not submit a form into the record until May 4, 2020. Bankr. Dkt. 556. The objection date for the May 4 filing was initially set for May 11, with a hearing to be held on May 18. Bankr. Dkt. 558. When Century and the other insurers received the draft, they sought confirmation as to the intended purpose of the Proof of Claim Form, because the Form's purpose would help determine the content it required. Bankr. Dkts. 651-1, ¶ 4; 656 at 4.

On May 11, the Tort Claimants' Committee ("TCC") filed an objection that sought substantial changes to the Bar Date notice materials and Proof of Claim Form. Bankr. Dkt. 601. Between May 11 and May 13, BSA and the insurers, including Century, exchanged comments on BSA's proposed Form while the insurers pressed for confirmation that the purpose of the Proof of Claim Form was solely to preserve a claimant's claim and collect information for mediation. Bankr. Dkts. 651-1, ¶ 3; 675 (May 18, 2020 Hr'g Tr.) at 47:11–12, 64:7–8. Among

---

[2] Note that this was months after the BSA had started discussing a bar date with tort claimants in this case, which had begun before BSA's February 18 bankruptcy filing. Bankr. Dkt. 675 (May 18, 2020 Hr'g Tr.) at 27:4–11 ("The abuse survivors had communicated to the debtors prior to the commencement of the Chapter 11 cases that they felt like a bar date was essential and that it would be essential to advancing negotiations around a global resolution of the bankruptcy cases. So in light of those discussions, we wanted to put a bar date on the table immediately.")

other proposals, the insurers offered text to clarify that the Form is not intended to establish

presumptive proof of the validity of claims for allowance purposes.[3]

BSA responded with alternative language to accomplish the same objective, which BSA

ultimately proposed to the court.  BSA's language, which was included in its May 14 and 18

proposed orders, was:

> The allowance, and the process for allowance, of Sexual Abuse Claims and the
> treatment thereof will be subject in all respects to the terms of any confirmed plan
> of reorganization for the Debtors and any trust distribution procedures that may be
> approved in connection therewith.

Bankr. Dkt. 667-1, ¶ 11.

On May 14, 2020, BSA filed another revised proposed order, making further substantial

changes to the Abuse Proof of Claim Form.  Bankr. Dkt. 632-1, Ex. 7.  On May 15, 2020, several

insurers, including Century, filed objections to the proposed form.  Bankr. Dkts. 651-1; 656; 659.

In their objections, Century and the other insurers proposed language, similar to the Debtors',

confirming that submission of the Proof of Claim Form would not establish a claim's prima facie

validity or, in the alternative if this assurance was not provided, asked that additional questions

designed to establish the claims' prima facie validity be added.  Bankr. Dkts. 651-1; 656.[4]

On May 15, 2020, BSA and the TCC noticed their intent to offer witness testimony at the

May 18 hearing.  Bankr. Dkts. 639; 649.  BSA also gave notice that the next day (Saturday, May

---

[3]   The language that Century ultimately proposed in its Objection was:  "The proof of claim may be
used to preserve the filer's claim, voting, and for purposes of mediation but does not constitute prima
facie evidence of the validity and amount of the claim under Rule 3001(f) or otherwise."  Bankr. Dkt.
656 at 4.

[4]   Hartford proposed language stating that "the Trust *will* impose an additional claims process" to
remedy the fact that the proposed Form was inadequate to determine the allowance and adjustment of
abuse claims.  Bankr. Dkt. 651-1, ¶ 7.  In the alternative to language negating the prima facie effect of
Form submission, Hartford and Century each alternatively proposed a series of additional questions to
be included in the claim form.  Bankr. Dkts. 651-1, Ex. A; 656, Appendix A.

16) BSA and the TCC would offer their expert witnesses for depositions in connection with the Bar Date Motion in advance of their testimony at the May 18 hearing. Century notified BSA of its intent to attend remotely and ask questions of the witnesses. Hours before the depositions were scheduled to begin, BSA notified the parties that the depositions had been cancelled.

On the morning of May 18, 2020, prior to the 10:00 a.m. hearing, BSA filed another set of revisions to its proposed order, Abuse Proof of Claim Form, and other materials. Bankr. Dkt. 667. Despite BSA's last-minute revisions, the Bar Date Motion went forward at the May 18 hearing,[5] where the Court heard testimony from the TCC's and BSA's experts, whom the insurers had been unable to depose.

BSA's expert expressed no opinion whether the questions in the proposed Abuse Proof of Claim Form would be sufficient to establish the elements of a claim. Bankr. Dkt. 675 (May 18, 2020 Hr'g Tr.) at 11:25–12:8. And the TCC's expert conceded that his proposed questions were intended to make completing the form easier and did not directly address the substantive elements of the claims. *Id.* at 16:12–17:23.

BSA's counsel, for its part, made clear at the hearing that in moving for a bar date BSA did not intend that claims filed via the Abuse Claim Form would be presumptively allowed. Rather, as BSA's counsel explained, BSA intended the Form as a mechanism for potential claimants to preserve their claims and for the parties to collect basic information regarding the claims for use in mediation:

> But if you do file an abuse survivor's proof of claim, it's the debtors' position that that does not mean that your claim is liquidated. It does not mean that we have set your claim up to be liquidated. It simply means that you are a

---

[5] BSA scheduled several major issues for the May 18 hearing, including the Bar Date Motion and its motion to appoint mediators. Bankr. Dkt. 668 (Notice of Third Amended Agenda of Matters Scheduled for Hearing on May 18, 2020, at 10:00 A.M. (ET)).

party that is asserting a claim in connection with these cases and that claim is an abuse survivor claim.

> We believe and it's consistent with virtually every mass tort case that *the plan of reorganization that is ultimately negotiated in this case will provide a process for allowing abuse survivor claims and liquidating abuse survivor claims* that will either be set forth in the plan itself or in the trust distribution procedures. . . .
>
> . . .
>
> We feel the language in paragraph eleven adequately protects [the insurers'] rights and our rights with respect, and the sexual abuse claimant's rights, with respect to the liquidation and future allowance for the claim and the process for doing that.

Bankr. Dkt. 675 (May 18, 2020 Hr'g Tr.) at 46:4–47:16 (emphasis added).

The bankruptcy court, however, declined to adopt in its approval order any language limiting the effect of a submitted Proof of Claim Form or, in the absence of such language, any of the additional questions that the insurers sought as an alternative. *Id.* at 71:1–9, 121:25– 122:9. The court rejected not only the insurers' proposed limiting language, but specifically directed BSA to delete the language it proposed in Paragraph 11 to ensure that a submitted Proof of Claim does not itself establish the claim's prima facie validity. *Id.* at 71:1–9.

On May 22, 2020, BSA filed the final version of the proposed Bar Date Order, incorporating the revisions ordered by the bankruptcy court. Bankr. Dkt. 684. The court signed the proposed Order on May 26, 2020. Dkt. 695. Importantly, the Order did not include the language explaining the limited effect that the Proof of Claims Form was intended to have or the insurer's formulation of this clause.

Within the 14 days provided by Rule 8002 of the Federal Rules of Bankruptcy Procedure, Century filed its Notice of Appeal under Rule 8003. Bankr. Dkt. 803.

## ARGUMENT

Apart from its misplaced ad hominem attacks on Century's motivations, BSA asserts two grounds for dismissing Century's appeal from the Bar Date Order. The first—that Century lacks

standing to assert any appellate objection to the Bar Date Order—is patently meritless.  The second—that the Bar Date Order is non-final and subject to appeal under § 158(a)(1) only at the conclusion of the entire case—is a closer question.  Century has objectively reasonable, good-faith grounds for appealing now, rather than later.

Alternatively, to avoid the end-of-case appeal delay that would be caused by treating the Bar Date Order as non-final, the Court should certify an interlocutory appeal under § 158(a)(3).  Contrary to BSA's submission, the standards for certification from a non-final order are satisfied here.

## I.     CENTURY HAS STANDING TO APPEAL THE BAR DATE ORDER

Century has standing to appeal the Bar Date Order under *In re Congoleum*, 426 F.3d 625 (3d Cir. 2005), a controlling Third Circuit decision BSA fails to mention.  In *Congoleum*, the Third Circuit held that a debtor's insurers had standing to appeal a bankruptcy court order on "an important preliminary matter" that would "profoundly affect the determination of the validity of a proposed plan ab initio," thereby directly affecting the rights of the insurers responsible for funding payouts under the plan.  *Id.* at 685.  The same is true here.

As *Congoleum* observes, bankruptcy appellate standing is "not a strict statutory requirement," *id.* at 687, or an Article-III-mandated limit on judicial power, *id.* at 685.  It is instead a "jurisprudential rule" devised to account for "the acute need to limit appeals in bankruptcy cases which often involve a myriad of parties indirectly affected by every bankruptcy court order." *Id.*  This "prudential" requirement limits appellate standing to parties whose interests are "directly affected" by a bankruptcy court order.  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004) (quoting *In re DuPage Boiler Works, Inc.*, 965 F.2d 296, 297 (7th Cir.1992); *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)).  To have standing, parties seeking

to appeal an order must show that it "diminishes their property, increases their burdens, or detrimentally affects their rights."  *Congoleum*, 426 F.3d at 685.

Applying that standard in *Congoleum*, the Third Circuit recognized standing for a debtor's insurers seeking to appeal the retention of special insurance counsel in a pre-packaged bankruptcy.  Because that issue would "implicate the integrity of the bankruptcy court proceeding as a whole," the court explained, it necessarily would "affect the resolution of issues that may directly affect the rights of insurers and fairness to the asbestos claimants," since the insurers would be responsible for funding any claims.  *Id.* at 685.  A debtor's insurer has standing, in other words, when "the appeal is from an order which will affect the fairness of the entire bankruptcy proceeding."  *Id.*; *see In re Pittsburgh Corning Corp.*, 308 B.R. 716, 727 (Bankr. W.D. Pa. 2004) (both debtor and its insurers "have an interest in defending liability and minimizing damages" throughout course of bankruptcy proceeding).

So it is here.  As in *Congoleum*, Century cannot be dismissed as merely one of "a myriad of parties indirectly affected" by the order being appealed.  *Id.*  Like the insurers in *Congoleum*, Century has a uniquely vital interest in the integrity and fairness of the process for allowing tort claims, to the extent that Debtors propose to tap Century's assets to pay any allowed claims.  And like the insurers in *Congoleum*, Century is appealing an order that will affect the entire proceeding.  Indeed, even more so than a special insurance counsel retention order, the Bar Date Order here establishes the basic framework for resolution of the entire bankruptcy.

Century's interest is, if anything, even more acute than the overall fairness interests that sufficed to establish standing for the debtor's insurers in *Congoleum*.  All agree that a party has standing to appeal an order that "increases one's burdens," BSA Mot. at 10 (quotation omitted); *see supra* at 8, which is exactly what the Bar Date Order does to Century:  by treating the proofs

of claim as establishing presumptively valid sexual-assault claims, without even requiring facts establishing a prima facie case, the Order shifts both the burden of production and the burden of proof to Century, which must litigate each claim individually, discover all relevant facts, and ultimately carry the burden of *dis*proving any claim it seeks to disallow. All likewise agree that a party has standing to appeal an order that "impairs one's rights," BSA Mot. at 10; *see supra* at 8, and again the Bar Date Order does exactly that, in two ways: it reverses the normal litigation burdens, and also forces Century to challenge claims in a truncated bankruptcy proceeding, rather than in the tort system, with all the discovery and motions procedures normally available to weed out meritless claims.

It is accordingly no answer to emphasize, as BSA does, that Century may still challenge submitted claims themselves through the flawed process established in the Bar Date Order. BSA Mot. at 11. That process is the *problem*, not the solution. Century's contention on appeal is that the Order impermissibly makes any submitted proof of claim presumptively allowable, with no specification of relevant facts establishing a prima facie case, or any other meaningful screening mechanism. Such an approach may be proper in some cases, but in this case, given the nature and number of claims, giving prima facie validity to such minimal proofs of claims imposes a staggering burden on Century to contest the claims and threatens to deprive Century of its normal tort litigation rights. BSA may not agree with Century's objections to how claims will be adjudicated (of course, BSA is playing with Century's money) but that disagreement is a *merits* question, not a *standing* issue. At this stage, Century need only show that it will be injured *if its objections are valid*.

Century also has appellate standing for the separate reason that it is a contingent creditor of BSA—its contracts with BSA impose obligations on both parties. In its Adversary

Proceeding, Hartford lays out facts and circumstances concerning BSA's production of privileged information to the tort claimants that applies equally to Century and provides one example of such a claim.[6]  As the Bar Date Order directly impacts all creditors, it impacts Century as well.

Rather than address controlling Circuit precedent in *Congoleum*, BSA relies mainly on the out-of-jurisdiction trial-court decision in *In re Old HB, Inc.*, 525 B.R. 218 (S.D.N.Y. 2015). To be sure, the insurer in that case was denied standing to appeal a bar date order, but the similarities end there.  Unlike here, the insurer's challenge to the bar date order in *Old HB* was not a challenge to the *entire proceeding itself*.  The insurer instead objected that the order did not sufficiently preclude other possible claims by other parties in other venues—consequences that were "all speculative or too many steps removed from the bankruptcy court's order." *Id.* at 225. *Old HB* shows at most that not all objections to a bar date order will give rise to bankruptcy appellate standing.  That unexceptionable principle has no relevance here, where the Order directly impairs Century's rights, and increases its burdens, in the very proceeding that will determine Century's pecuniary obligations to claimants.  Because the Order directly affects Century's rights and obligations, Century has standing to appeal it.

## II.    THE BAR DATE ORDER IS ARGUABLY FINAL

The more difficult question is whether Century may appeal the Bar Date Order now, or instead must wait until the conclusion of the entire case to challenge the summary proof

---

[6]  *See* Complaint ¶¶ 107–126, *Hartford Accident and Indemnity Co. v. Boy Scouts of Am.*, No. 20-50601-LSS (Bankr. D. Del. filed May 15, 2020) [Dkt. 1] ("When BSA provided Hartford with access to the data room, Hartford discovered that it contained a number of communications containing privileged communications between BSA and its insurers regarding Underlying Lawsuits. . . .  On information and belief, those documents were accessible to, and were in fact accessed by, various constituencies representing abuse claimants in this chapter 11 case including the TCC and/or the FCR.")

contemplated in the Order.  Courts disagree on the question whether a bar date order is, in general, final and immediately appealable.  *Compare*, *e.g.*, *In re 2715 N. Milwaukee L.L.C.*, 422 B.R. 675, 682 (Bankr. N.D. Ill. 2010) (bar date order is final); *Maressa v. A.H. Robins Co.*, 839 F.2d 220, 221 (4th Cir. 1988) (suggesting bar date order is final by applying Rule 60(b) standard to revision of order); *In re Loefgren*, 305 B.R. 288, 289 (W.D. Wis.) (denial of motion to extend bar date for objections to discharge of debt was final under §158(a)(1) because it disposed of the appellant's objection), *aff'd*, 85 F. App'x 522 (7th Cir. 2003) *with In re Hooker Invs., Inc.*, 937 F.2d 833, 836–37 (2d Cir. 1991) (bar date order is non-final); *In re STN Enters., Inc.*, 99 B.R. 218, 220 (D. Vt. 1988) (same); *In re Wijewickrama*, 2018 WL 2212983, at *3 (W.D.N.C. 2018) (same, but granting discretionary interlocutory appeal).

On this issue, BSA does cite the relevant Circuit precedent, *In re Energy Future Holdings Corp.*, 949 F.3d 806 (3d Cir. 2020), which held that a bar date order did not qualify as "final" under the particular circumstances of that case, *see id.* at 817–18.  But *Energy Future Holdings* does not necessarily compel the same result here, under the finality standards articulated by the U.S. Supreme Court in *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020).  In both *Energy Future Holdings* and *Ritzen Group*, the appellant waited until the end of the case to challenge an earlier ruling, and a question was raised in each case whether the appeal was forfeited by the delay.  In *Ritzen*, the later appeal was held to be untimely; in *Energy Future*, the later appeal was allowed to proceed.  By bringing its appeal now, Century seeks to resolve any dispute over timing without risking forfeiture of its appellate rights.

In *Ritzen Group*, the Supreme Court explained that whereas finality in "civil litigation generally" is "normally limited to an order that resolves the entire case," thus requiring the appellant to "raise all claims of error in a single appeal," this "ordinary understanding of 'final

decision' is not attuned to the distinctive character of bankruptcy litigation."  140 S. Ct. at 586.

In contrast to normal civil cases, bankruptcy cases often encompass multiple discrete disputes,

and "controversies adjudicated during the life of a bankruptcy case may be linked, one dependent

on the outcome of another."  *Id.*  Applying the normal finality rule thus "could have this

untoward consequence:  Reversal of a decision made early on could require the bankruptcy court

to unravel later adjudications rendered in reliance on an earlier decision."  *Id.*

This key practical difference is reflected in the language of 28 U.S.C. § 158(a), which

authorizes an appeal as of right to district court from "final judgments, orders, and decrees"

entered by bankruptcy courts "in cases *and proceedings*."  *Id.* (emphasis added).  "By providing

for appeals from final decisions in bankruptcy 'proceedings,' as distinguished from bankruptcy

'cases,'" the *Ritzen Group* Court explained, "Congress made orders in bankruptcy cases

immediately appealable if they finally dispose of discrete disputes within the larger bankruptcy

case."  *Id.* (internal quotation marks and alterations omitted).  Turning to the order at issue—a

denial of relief from the automatic stay—the Court held such orders are final because they

"dispose[] of a procedural unit anterior to, and separate from, claim-resolution proceedings."  *Id.*

at 589.

The Third Circuit in *Energy Future Holdings* summarized *Ritzen Group*'s analysis of

bankruptcy finality.  A ruling is final and appealable, the Third Circuit explained, when it

resolves a proceeding that "'initiates a discrete procedural sequence, including notice and a

hearing'; requires application of a 'statutory standard'; and does 'not occur as part of the

adversary claims-adjudication process.'"  949 F.3d at 817 (quoting *Ritzen Group*, 140 S. Ct. at

589).  Applying those standards to the bar date order appeal in that case, the Third Circuit held

that while the bar date motion did initiate a discrete procedural sequence, it did not satisfy the

other two finality elements. First, it did not involve application of a "statutory standard": the bar date was challenged by purported representatives of unmanifested asbestos claimants who complained that discharging latent (and hence unknown) claims through application of a bar date violated due process. *Id.* at 814, 817. Second, it was "not anterior to and separate from" the adversary claims-adjudication process, but was instead "intertwined with" the adjudication of latent claims, since it dictated their denial. *Id.* at 817–18.

The circumstances here are different. The distinct procedural sequence at issue is not the imposition of a claims deadline challenged by potential claimants invoking vague due process concerns. It is instead the court's establishment of a proof of claim form giving presumptive prima facie validity to submitted claims. That ruling, unlike the claim deadline challenged in *Energy Future Holdings*, is governed by a "statutory standard," i.e., the requirements of Code § 502(a) and Rule 3001(f), under which a claim may be presumptively "deemed allowed" only if the proof of claim includes allegations sufficient to establish a prima facie case. *See infra* at 16.

The Bar Date Order's establishment of a facially inadequate Proof of Claim Form is also less intertwined with the "adversary claims-adjudication process, proceedings typically governed by state substantive law." *Ritzen Group*, 140 S. Ct. at 589. The Order establishes a presumption that all submitted claims are allowed, shifting the burden of disproving them, but it does not apply or implicate state substantive law, nor does it determine the outcome of any particular claim. In *Energy Future Holdings*, by contrast, the bar date was held to be intertwined with the adjudication of latent claims because it conclusively determined the validity of any claim submitted after the specified deadline. *See* 949 F.3d at 817–18.

Finally, unlike the claims deadline challenged in *Energy Future Holdings*, the bankruptcy court's decision to give the Proof of Claim Form prima facie validity is the kind of order

described in *Ritzen Group*, where "[r]eversal of a decision made early on could require the bankruptcy court to unravel later adjudications rendered in reliance on an earlier decision," an "untoward consequence" that favors an immediate appeal. 140 S. Ct. at 586. "Because bankruptcy proceedings are often protracted, and time and resources can be wasted if an appeal is delayed until after a final disposition, [judicial] policy has been to quickly resolve issues central to the progress of a bankruptcy." *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005). Those concerns are manifest here: because the Order's treatment of the Proof of Claim Form will have enormous influence on the number of claims submitted and the ultimate resolution of the case, delaying Century's appeal of the Order could well require the bankruptcy court to unravel essentially the entire case, depending on how the appeal is resolved. *See Ritzen Group*, 140 S. Ct. at 590 (practical consequences of adjudication are relevant to finality analysis). This is especially the case as a finding that the Order is not final may also open the door to later appeals by dissatisfied tort claimants.

These differences from *Energy Future Holdings* may or may not be distinctions that matter under § 158(a)(1). But if they do, then Century can—and indeed *must*—appeal the Bar Date Order now.

## III. THE COURT SHOULD GRANT LEAVE TO APPEAL UNDER § 158(A)(3)

For the same practical reasons just discussed, if the Court does not conclude that the Bar Date Order here is final and hence appealable as of right under § 158(a)(1), it should grant leave to appeal under § 158(a)(3), which authorizes discretionary appeals from "interlocutory" orders. The court in *Wijewickrama* followed that approach—it held that a bar date order was non-final under § 158(a)(1), but treated the notice of appeal as a motion for leave under § 158(a)(3) and granted the appeal. 2018 WL 2212983 at *3. The Court should follow the same course here.

As BSA observes, courts considering discretionary appeal under § 158(a)(3) apply the same standards applied under 28 U.S.C. § 1292(b), which authorizes an interlocutory appeal when the order at issue "(1) involves a controlling question of law upon which there is (2) substantial grounds for a difference of opinion as to its correctness and, (3) if appealed immediately, may materially advance the ultimate termination of the litigation." *In re Flintkote Co.*, 471 B.R. 95, 102 (D. Del. 2012). Those standards are satisfied here.

The straightforward question of law presented here is whether a proof of claim can be treated as establishing a prima facie case when it does not include allegations establishing all the elements of a claim. The relevant facts are undisputed: neither expert testified that the proposed Form would establish the elements of any sexual-abuse claim, and TCC's expert affirmatively testified that his goal was to produce a simple form, *not* one that would establish any legal elements. *See supra* at 5. BSA's own motion tacitly concedes the point, arguing that the Form was adequate solely because it was crafted to avoid "'intrusive' questions" and "tailored" to the "sensitivities" of child-abuse victims. BSA Mot. at 15. The objective may be laudable, but BSA does not and could not show that the resulting Form actually requests information that, if true, would establish a prima facie case of actionable abuse against BSA.

The question whether the Form is legally adequate is "controlling" as to the fundamental procedure for allowing and disallowing claims, and is hence controlling as to Century's rights and obligations in objecting to claims. That question is also one as to which there is, to say the least, a substantial ground for difference of opinion. Only "a claim that alleges facts *sufficient to support a legal liability to the claimant* satisfies the claimant's initial obligation to go forward." *In re Allegheny, Int'l, Inc.*, 954 F.3d 167, 173 (3d Cir. 1992) (emphasis added). In other words, "the allegations of the proof of claim are taken as true," and *if* those "allegations set forth all the

necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim." *In re Holm*, 931 F.3d 620, 623 (3d Cir. 1991) (internal quotation marks omitted). By parity of reasoning, if the facts provided in the proof of claim do not establish a claim, there is no basis in law for treating the proof of claim as establishing its prima facie validity. *See In re Nortel Networks, Inc.*, 469 B.R. 478, 497 (Bankr. D. Del. 2012) (applying Rule 12(b)(6) standards to proof of claim involving tort claims). In BSA's view, certain bankruptcy claimants should be relieved of the normal obligation to allege facts required to state a claim, but such claimants would not be afforded similar relief in other civil litigation contexts, and reasonable jurists can disagree over whether bankruptcy litigation should operate differently on this point.

Other bankruptcy courts have recognized the need for more detailed information when mass tort claims are at issue. In *In re A.H. Robins Co., Inc.*, 862 F.2d 1092 (4th Cir. 1988), for example, the district court (sitting in bankruptcy) established a two-step process by which claimants would first file a statement of intent to make a certain type of claim along with their name and address, and then later would be required to fill out a detailed questionnaire. *Id.* at 1093. The questionnaire requested information related to the claim, such as dates of use of the product, the type of injury alleged, and details about any medical attention sought. *Id.* The Fourth Circuit upheld the district court's decision to disallow claimants who failed to complete the questionnaire on the grounds that, without answers to the questionnaire's more detailed inquiries, the "initial statement of intention to make a claim would be insufficient as valid proof of claim." *Id.* at 1096. The same is true here.

To be clear, the prima facie statement requirement is not merely a technical procedural hurdle, especially in a case like this one. After years of advertising by plaintiff firms for claims against BSA, there were 275 known claims pending in the tort system when BSA filed for

bankruptcy. Bankr. Dkt. 16, ¶ 7. If so little is required to establish the claimant's prima facie case for a generous monetary payout, the history of abuses in mass tort litigation show that there is a tremendous risk of a flood of meritless claims.[7]

In the absence of any meaningful threshold clarification of the claims, the parties and the court will face an enormous burden of factual inquiry even to identify which claims have *any* facial legitimacy, let alone delve further into claims that at least pass an initial screen for allegation of facts establishing a prima facie case. Under these circumstances, having failed to require legally adequate information in connection with the Proof of Claim Form, the bankruptcy court should be compelled to give the Form the legal weight it deserves: the Form can serve the important function of preserving claims and gathering information for mediation and valuation purposes, but it should not establish the claimant's prima facie right to a monetary recovery from BSA.

Finally, for reasons already discussed, resolving the issue now would materially advance the termination of the litigation. The only alternative is to leave the issue for appeal at the end of the case, at which point, if reviewing courts agree with Century, the entire bankruptcy case may need to be unwound to ensure proper treatment of valid sexual-abuse claims. *See Armstrong*, 432 F.3d at 511 ("time and resources can be wasted if an appeal is delayed until after a final disposition"). BSA's only contrary argument is that an appeal now would delay the proceedings because the Form "has already been sent to millions of potential claimants." BSA Mot. at 16. BSA wrongly assumes, however, the only remedy is to withdraw the flawed Form and resend a legally adequate Form. *Id.* A much simpler remedy is available, as just discussed: the

---

[7] *See, e.g.*, *In Re Silica Products Liability Litig.*, 398 F. Supp. 2d 563, 571–72 (S.D. Tex. 2005); *In re Joint E. & S. Dists. Asbestos Litig.*, 237 F. Supp. 2d 297, 314–16 (E.D.N.Y. 2002) (influx of questionable claims required court to re-design claims process).

bankruptcy court can be ordered not to give a claim submitted on the Form prima facie validity. That remedy can be imposed now, in this appeal, without re-doing notice, postponing the Bar Date, or any other delay-causing measure. The parties would need to adjust the claims-allowance process to weed out fraudulent claims submitted via the cursory Form, but BSA has not shown that such a process would entail any material delay.

Of course, if the Form does result in so many fraudulent claims that proceedings must be delayed to deal with them, that outcome would only confirm the profound unfairness—not just to Century, but to genuinely injured victims—of a claims-allowance proceeding that grants presumptive validity to facially inadequate claims.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the appeal should be denied. In the alternative, the Court should grant leave to appeal under 28 U.S.C. § 158(a)(3).

Dated:  June 29, 2020

Respectfully Submitted,

By:    */s/ Stamatios Stamoulis*
           Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688

O'MELVENY & MYERS LLP
Jonathan Hacker (*pro hac vice anticipated*)
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice anticipated*)
Janine Panchok-Berry (*pro hac vice anticipated*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company*