**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: : | |
| : | |
| BOY SCOUTS OF AMERICA and : | Civil Action No. 20-cv-00774 (RGA) |
| DELAWARE BSA, LLC, : | |
| : | |
| Debtors. : | |
| : | |
| : | |
| CENTURY INDEMNITY COMPANY, : | |
| WESTCHESTER FIRE INSURANCE : | |
| COMPANY and WESTCHESTER SURPLUS : | |
| LINES INSURANCE COMPANY, : | On appeal from the U.S. Bankruptcy Court |
| : | for the District of Delaware |
| Appellants, : | |
| : | Bankruptcy Case No. 20-10343 (LSS) |
| v. : | |
| : | Bankruptcy BAP No. 20-13 |
| BOY SCOUTS OF AMERICA and : | |
| DELAWARE BSA, LLC, : | |
| : | |
| Appellees. : | |
| : | |

## APPELLANTS' OPENING BRIEF ON APPEAL

**O'MELVENY & MYERS LLP**
Jonathan Hacker
1625 Eye Street, N.W.
Washington, DC  20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
jhacker@omm.com

**O'MELVENY & MYERS LLP**
Tancred Schiavoni
Janine Panchok-Berry
Andrew Kirschenbaum
Times Square Tower
7 Times Square
New York, NY  10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
tschiavoni@omm.com
jpanchok-berry@omm.com
akirschenbaum@omm.com

**STAMOULIS & WEINBLATT LLC**
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, DE  19801
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
stamoulis@swdelaw.com

*Counsel for Appellants Century Indemnity
Company, as successor to CCI Insurance
Company, as successor to Insurance
Company of North America and Indemnity
Insurance Company of North America,
Westchester Fire Insurance Company and
Westchester Surplus Lines Insurance
Company*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Appellant Century Indemnity Company ("Century") states that it is a wholly owned subsidiary of Brandywine Holdings Corporation, which is a wholly owned subsidiary of INA Financial Corporation.  INA Financial Corporation is a wholly owned subsidiary of INA Corporation, which is a wholly owned subsidiary of Chubb INA Holdings, Inc.  Chubb INA Holdings, Inc. is 80% owned by Chubb Group Holdings Inc. and 20% owned by Chubb Limited.  Chubb Group Holdings, Inc. is a wholly owned subsidiary of Chubb Limited.  Chubb Limited, the ultimate parent corporation, is publicly traded (NYSE: CB).

Appellant Westchester Surplus Lines Insurance Company is a wholly owned subsidiary of Chubb US Holdings Inc. (a Delaware corporation).  Chubb US Holdings Inc. is a wholly owned subsidiary of Chubb Group Holdings Inc. (a Delaware corporation).  Chubb Group Holdings Inc. is a wholly owned subsidiary of Chubb Limited (a Swiss company).  Chubb Limited is the ultimate parent and an NYSE-listed publicly traded company.  Appellant Westchester Fire Insurance Company is a wholly owned subsidiary of Chubb US Holdings, Inc., a Delaware corporation.  Chubb Limited, a Swiss corporation, is the ultimate, indirect parent and the only publicly traded entity.  Chubb Limited does not directly own any stock of Westchester Fire Insurance Company.

## TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUE..............................................................2

STANDARD OF REVIEW ...................................................................2

STATEMENT OF THE CASE................................................................2

    A.    BSA's motion did not include a proof of claim form. ........................2

    B.    BSA's proposed Form of approval order did not seek presumptive allowance.........................................................4

    C.    The bankruptcy court's hearing...........................................7

    D.    Testimony that the Form was not intended to establish the substantive legal elements of a claim against BSA..............................8

    E.    BSA's statements at the hearing about the limited intended use of the form. ........................................................9

    F.    The order entered by the bankruptcy court. ....................................10

SUMMARY OF ARGUMENT ............................................................11

ARGUMENT ........................................................................11

I.    THE PROOF OF CLAIM IN THIS CASE WILL FAIL TO ESTABLISH SUFFICIENT FACTS TO BE GIVEN PRIMA FACIE VALIDITY ......................................................12

II.    ADJUDICATING MASS TORT CLAIMS IN BANKRUPTCIES INVOLVES UNIQUE RISKS THAT REQUIRE CAREFUL MANAGEMENT .................................................20

CONCLUSION ......................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boy 1 v. Boy Scouts of America*,
  993 F. Supp. 2d 1367 (W.D. Wash. 2014) ................................................... 16, 17

*Boy 1 v. Boy Scouts of America*,
  No. C10-1912-RSM, 2012 WL 12882006
  (W.D. Wash. Jan. 17, 2012).................................................................................17

*Campbell v. Countrywide Home Loans, Inc.*,
  545 F.3d 348 (5th Cir. 2008) ...............................................................................13

*Cohen v. de la Cruz*,
  523 U.S. 213 (1998)...............................................................................................13

*Doe v. Boy Scouts of America*,
  4 N.E.3d 550 (Ill. App. Ct. 2014) ................................................................. 17, 18

*Gold Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*,
  926 S.W.2d 287 (Tex. 1996)......................................................................... 17, 18, 19

*In re A.H. Robins Co., Inc.*,
  862 F.2d 1092 (4th Cir. 1988) ..............................................................................23

*In re Allegheny, Int'l, Inc.*,
  954 F.3d 167 (3d Cir. 1992) .......................................................................... 13, 20

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2005) ......................................................................... 15, 16

*In re Congoleum Corp.*,
  426 F.3d 675 (3d Cir. 2005) .................................................................................21

*In re Holm*,
  931 F.3d 620 (3d Cir. 1991) .................................................................................13

*In re Imerys Talc Am., Inc.*,
  No. 19-MC-103 (MN), 2019 WL 3253366 (D. Del. July 19, 2019)...................26

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Joint E. & S. Dists. Asbestos Litig.*,
   237 F. Supp. 2d 297 (E.D.N.Y. 2002) .................................................................21

*In re Jorczak*,
   314 B.R. 474 (Bankr. D. Conn. 2004) .................................................................13

*In re Kincaid*,
   388 B.R. 610 (Bankr. E.D. Pa. 2008) .................................................................13

*In re Sharon Steel Corp.*,
   871 F.2d 1217 (3d Cir. 1989) .................................................................................2

*In re Silica Products Liability Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005).................................................................21

*In re The Delaco Co.*,
   No. 04-10899 (CB) .......................................................................................... 23, 24

*In re USG Corp.*,
   290 B.R. 223 (Bankr. D. Del. 2003).................................................................15

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*,
   229 A.D.2d 159 (N.Y. Sup. Ct. 1997) .................................................................19

*N.K. v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-*
   *Day Saints*,
   307 P.3d 730 (Wash. Ct. App. 2013).................................................................17

*Sapp v. The Roman Catholic Archbishop of Portland in Oregon*,
   No. CV 08-68-PK, 2008 WL 1849915 (D. Or. Apr. 22, 2008)..........................19

*United States v. Sanford*,
   979 F.2d 1511 (11th Cir. 1992) .........................................................................15

**Statutes**

11 U.S.C. § 101(5)(A).............................................................................................11

11 U.S.C. § 105 .......................................................................................................22

iii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

11 U.S.C. § 502.................................................................................22

11 U.S.C. § 502(a) ............................................................................11

28 U.S.C. § 157(b)(5).......................................................................24

## Other Authorities

Deborah R. Hensler & Mark A. Peterson, *Understanding Mass Personal Injury Litigation*, Santa Monica, CA: RAND Corporation, 1995, https://www.rand.org/pubs/research_briefs/RB9021.html. .......................21

Martha Chamallas, *Vicarious Liability in Torts: The Sex Exception*, 48 Val. U. L. Rev. 133 (2013) ................................................................19

Richard A. Nagreda, *Mass Torts in a World of Settlement* 150 (2007)..................20

S. Todd Brown, *How Long Is Forever This Time? The Broken Promise of Bankruptcy Trusts*, 61 Buff. L. Rev. 537 (2013) .............................24

Sara Randazzo & Jacob Bunge, *Inside the Mass-Tort Machine That Powers Thousands of Roundup Lawsuits*, Wall St. J., Nov. 25, 2019, https://www.wsj.com/articles/inside-the-mass-tort-machine-that-powers-thousands-of-roundup-lawsuits-11574700480 ...............................21

## Rules

Fed. R. Bankr. P. 2002(a)(7)....................................................................22

Fed. R. Bankr. P. 3001 .............................................................................12

Fed. R. Bankr. P. 3001(a) ........................................................................22

Fed. R. Bankr. P. 3001(f).........................................................................12

Fed. R. Bankr. P. 9008.............................................................................22

## JURISDICTIONAL STATEMENT

The bankruptcy court has jurisdiction over the chapter 11 bankruptcy cases filed by Boy Scouts of America and Delaware BSA, Inc. (collectively, "BSA") under 28 U.S.C. §§ 157(a), (b) and 1334(a), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  On May 26, 2020, the court issued a final order fixing a Bar Date for claims and approving notice procedures and proof of claim forms for various categories of creditors (the "Bar Date Order").  The approval order states that Debtors "consented to the entry of a final order by this Court under Article III of the United States Constitution."  Appellants[1] filed a timely notice of appeal on June 8, 2020.  This Court has jurisdiction over final orders of the bankruptcy court under 28 U.S.C. § 158(a)(1) and over interlocutory appeals under 28 U.S.C. § 158(a)(3).[2]

---

[1]   Appellants in this matter are Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America, Westchester Fire Insurance Company and Westchester Surplus Lines Insurance Company (collectively, "Century").

[2]   Appellees have moved to dismiss this appeal in part on the grounds that the Bar Date Order did not qualify as a final order under 28 U.S.C. § 158(a)(1). Appendix at APP001–APP003, Dist. Ct. Dkt. 4.  The Court has not ruled on that motion.  Appellants believe, as set forth in their objection to that motion, that the Bar Date order is a final order, appealable under 28 U.S.C. § 158(a)(1), or, in the alternative, that the Court should grant leave to take this appeal under

## STATEMENT OF THE ISSUE

The approved Proof of Claim Form indisputably does not require the claimant to provide information sufficient to establish a prima facie claim against BSA, as required by the Code and judicial precedent.  Because the Form has already been distributed, this appeal does not require an amendment to the Form itself, but instead presents the following question:  Whether the Bar Date Order should be amended to provide that submission of a Proof of Claim does not establish a presumptively valid claim, but instead operates only to preserve claims and provide information about potential claims.

## STANDARD OF REVIEW

The determination whether the Proof of Claim Form is legally sufficient to establish the prima facie validity of a claim is a question of law subject to de novo review.  *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989) (appellate court conducts plenary review of conclusions of law).

## STATEMENT OF THE CASE

### A.      BSA's motion did not include a proof of claim form.

On February 18, 2020, BSA filed its motion that resulted in the Order that is the subject of this appeal (the "Bar Date Motion").[3]  Appendix at APP155–

---

28 U.S.C. § 158(a)(3).  APP028–APP050, Dist. Ct. Dkt. 12.

[3]   The Motion was formally styled *Debtors' Motion, Pursuant to 11 U.S.C. § 502(b)(9), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rules 2002-1(e),*

APP184,[4] Bankr. Dkt. 18.  BSA's motion sought the establishment of a "bar date"

for tort claims—i.e., the date after which tort claims against the debtor would not

be allowed—and the noticing procedures for advising the public of the bar date.

APP158, Bankr. Dkt. 18 ¶ 7.  While BSA proposed a "model Proof of Claim form

for holders of Abuse Claims (the '<u>Abuse Proof of Claim Form</u>')," the Motion

included no such form.  APP158, Bankr. Dkt. 18 ¶ 7(g).

   Though no Abuse Proof of Claim Form was attached to the Bar Date

Motion, BSA promised that the form to be employed would "request[] important

information relating to the Abuse Claims . . . which will assist the Debtors and

parties in interest in evaluating and resolving the Abuse Claims."  APP177, Bankr.

Dkt. 18 ¶ 36.  BSA further insisted that "obtaining this information will be

essential to moving forward on a path of resolution in these chapter 11 cases,"

whether through settlement of the claims or otherwise.  *Id.*

   BSA informally circulated a draft Proof of Claim Form in April,[5] but it did

not submit a form into the record until May 4, 2020.  APP735–APP737, Bankr.

---

*3001-1, and 3003-1, for Authority to (I) Establish Deadlines for Filing Proofs
of Claim, (II) Establish the Form and Manner of Notice Thereof, (III) Approve
Procedures for Providing Notice of Bar Date and Other Important Information
to Abuse Victims, and (IV) Approve Confidentiality Procedures for Abuse
Victims.*

[4]   Citations formatted as "APP###" refer to the Appellants' concurrently field
   Appendix to this Opening Brief.

[5]   This was months after the BSA had started discussing a bar date with tort

Dkt. 557.  The objection date for the May 4 filing was initially set for May 11, with a hearing to be held on May 18.  APP219–APP221, Bankr. Dkt. 558.  When Century and the other insurers received the draft, they sought confirmation as to the intended purpose of the Proof of Claim Form, because the Form's purpose would help determine the content it required.  APP322, Bankr. Dkt. 651-1, ¶ 4; APP344, Bankr. Dkt. 656 at 4.

### B.   BSA's proposed form of approval order did not seek presumptive allowance.

On May 11, the Tort Claimants' Committee ("TCC") filed an objection that sought substantial changes to the Bar Date notice materials and Proof of Claim Form.  APP222–APP232, Bankr. Dkt. 601.  Between May 11 and May 13, BSA and the insurers, including Century, exchanged comments on BSA's proposed Form, with the insurers principally seeking confirmation that the Proof of Claim Form would not be used to establish a presumptively valid claim, but instead would be used solely to preserve a claimant's claim and collect information for mediation.  APP321, Bankr. Dkt. 651-1, ¶ 3; APP468, APP485, Bankr. Dkt. 675,

_____

claimants in this case, which had begun before BSA's February 18 bankruptcy filing.  APP448, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 27:4–11 ("The abuse survivors had communicated to the debtors prior to the commencement of the Chapter 11 cases that they felt like a bar date was essential and that it would be essential to advancing negotiations around a global resolution of the bankruptcy cases.  So in light of those discussions, we wanted to put a bar date on the table immediately.").

May 18, 2020 Hr'g Tr. at 47:11–12, 64:7–8.  Among other proposals, the insurers

offered text to clarify that the Form would *not* be intended to establish presumptive

proof of the validity of claims for allowance purposes.[6]

BSA responded with alternative language to accomplish the same objective

the insurers were pursuing.  BSA ultimately requested the following language,

which was included in its May 14 and 18 proposed orders:

> The allowance, and the process for allowance, of Sexual Abuse
> Claims and the treatment thereof will be subject in all respects to the
> terms of any confirmed plan of reorganization for the Debtors and any
> trust distribution procedures that may be approved in connection
> therewith.

APP370, Bankr. Dkt. 667-1, ¶ 11.  In BSA's view, this language reserved all

questions about each claim's validity for the final plan, rather than giving any

claim presumptive validity up front.

On May 14, 2020, BSA filed another revised proposed order, making further

substantial changes to the Abuse Proof of Claim Form.  APP303–APP315, Bankr.

Dkt. 632-1, Ex. 7.  On May 15, 2020, several insurers, including Century, filed

objections to the proposed form.  APP319–APP340, Bankr. Dkt. 651-1; APP341–

APP350, Bankr. Dkt. 656; APP351–APP353, Bankr. Dkt. 659.  In their objections,

---

[6]   The language that Century proposed in its Objection was:  "The proof of claim
may be used to preserve the filer's claim, voting, and for purposes of mediation
but does not constitute prima facie evidence of the validity and amount of the
claim under Rule 3001(f) or otherwise."  APP344, Bankr. Dkt. 656 at 4.

Century and the other insurers proposed language, similar to the Debtors',

confirming that submission of the Proof of Claim Form would not establish a

claim's prima facie validity. In the alternative, absent such assurance, Century

proposed additional questions aimed at establishing, in the Form, various elements

necessary to the Boy Scouts' liability and information related to damages.

APP341–APP350, Bankr. Dkt. 651-1; APP341–APP350, Bankr. Dkt. 656.[7] The

information Century would have sought includes:

- The identity of anyone at BSA (or at the Local Council or chartering/sponsoring level) to whom abuse was reported, when they were notified, and any documentation of that notification;

- Any knowledge and/or evidence that BSA (or the Local Council or chartering/sponsoring organization) knew about the abuse, and the details of their knowledge (how they learned of the abuse, what specifically they knew about the abuse, when they learned about the abuse, what actions they took);

- Any contemporaneous documentation of abuse, including letters written by or on behalf of victims to the BSA.

APP349, Bankr. Dkt. 656, App. A.

---

[7] Hartford proposed language stating that "the Trust *will* impose an additional claims process" to remedy the fact that the proposed Form was inadequate to determine the allowance and adjustment of abuse claims. APP323, Bankr. Dkt. 651-1, ¶ 7. In the alternative to language negating the prima facie effect of Form submission, Hartford and Century each alternatively proposed a series of additional questions to be included in the claim form. APP326, Bankr. Dkt. 651-1, Ex. A; APP349, Bankr. Dkt. 656, App. A.

**C.     The bankruptcy court's hearing.**

On May 15, 2020, BSA and the TCC noticed their intent to offer witness testimony at the May 18 hearing.  APP619–APP622, Bankr. Dkt. 639; APP623–APP626, Bankr. Dkt. 649.  BSA also gave notice that the next day (Saturday, May 16) BSA and the TCC would offer their expert witnesses for depositions in connection with the Bar Date Motion in advance of their testimony at the May 18 hearing.  Century notified BSA of its intent to attend remotely and ask questions of the witnesses.  Hours before the depositions were scheduled to begin, BSA notified the parties that the depositions had been cancelled.

On the morning of May 18, 2020, prior to the 10:00 a.m. hearing, BSA filed another set of revisions to its proposed order, Abuse Proof of Claim Form, and other materials.  APP357, Bankr. Dkt. 667.  Despite BSA's last-minute revisions, the Bar Date Motion went forward at the May 18 hearing,[8] where the Court heard testimony from the TCC's and BSA's experts, whom the insurers had been unable to depose.

---

[8]   BSA scheduled several major issues for the May 18 hearing, including the Bar Date Motion and its motion to appoint mediators.  APP627–APP640, Bankr. Dkt. 668, Notice of Third Amended Agenda of Matters Scheduled for Hearing on May 18, 2020, at 10:00 A.M. (ET).

**D.      Testimony that the Form was not intended to establish the substantive legal elements of a claim against BSA.**

At the hearing, TCC offered the declaration and testimony of its expert in childhood sexual abuse, Dr. Jon Conte.  Dr. Conte's expertise is in the psychological impacts and effects of child abuse, rather than the legal elements required to establish an abuse claim.  APP435, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 14:14–15:7.  In his declaration, Dr. Conte states that he was asked to address whether the Abuse Proof of Claim Form was sensitive to and likely to generate responses from abuse survivors.  APP233, Bankr. Dkt. 601-6.  At the hearing, he conceded that his proposed questions were intended to make completing the Form easier and did not directly address the substantive elements of the claims.  APP437, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 16:12–17:23.

BSA's expert, who specializes in noticing procedures, expressed no opinion whether the questions in the proposed Abuse Proof of Claim Form would be sufficient to establish the elements of a claim.  APP432, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 11:25–12:8.  Specifically, she stated that she was only qualified to offer opinions on the "the efficacy of the actual notice program to reach potential claimants," and could not speak to "anything regarding legal claims."  APP433, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 12:5–8.

8

### E.   BSA's statements at the hearing about the limited intended use of the Form.

BSA, for its part, made clear at the hearing that in moving for a bar date

BSA did not intend that claims filed via the Abuse Claim Form would be

presumptively allowed.  Rather, as BSA's counsel explained, BSA intended the

Form solely to be a mechanism for potential claimants to preserve their claims and

for the parties to collect basic information regarding the claims for use in

mediation:

> But if you do file an abuse survivor's proof of claim, it's the
> debtors' position that that does not mean that your claim is liquidated.
> It does not mean that we have set your claim up to be liquidated.  It
> simply means that you are a party that is asserting a claim in
> connection with these cases and that claim is an abuse survivor claim.
>
> We believe and it's consistent with virtually every mass tort
> case that *the plan of reorganization that is ultimately negotiated in
> this case will provide a process for allowing abuse survivor claims
> and liquidating abuse survivor claims* that will either be set forth in
> the plan itself or in the trust distribution procedures. . . .
>
> . . .
>
> We feel the language in paragraph eleven adequately protects [the
> insurers'] rights and our rights with respect, and the sexual abuse
> claimant's rights, with respect to the liquidation and future allowance
> for the claim and the process for doing that.

APP467–APP468, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 46:4–47:16

(emphasis added).

The bankruptcy court, however, declined to adopt in its approval order any

language limiting the effect of a submitted Proof of Claim Form or, in the absence

9

of such language, any of the additional questions that the insurers sought as an alternative.  APP492, APP542–APP543, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 71:1–9, 121:25–122:9.

### F.   The order entered by the bankruptcy court.

The bankruptcy court rejected not only the insurers' proposed limiting language, but specifically directed BSA to delete the language it proposed in Paragraph 11 to ensure that a submitted Proof of Claim does not itself establish the claim's prima facie validity.  APP492, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 71:1–9.  The court explained that its view was "if I can look at it and understand what it is that the claimant has alleged, for example, breach of contract, breach of my employment agreement, services performed, and if its signed under oath and, otherwise, meets the requirements I think it's a valid proof of claim."  APP491, Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 70:9–14.

On May 22, 2020, BSA filed the final version of the proposed Bar Date Order, incorporating the revisions ordered by the bankruptcy court.  APP583–APP587, Bankr. Dkt. 684.  The final Proof of Claim Form solicits identifying and background information about the claimant, and requests information setting forth facts of the incidents of the alleged abuse (e.g., what happened; where, when, and with what frequency the abuse occurred) and the abuser (e.g., who they are).  APP606–APP618, Dkt. 695-7, Parts 2, 3 and 5.  The Form only solicits limited

10

information regarding whether and to whom the abuse was reported, and does not include questions that go to what the Boy Scouts knew about the abuser prior to the incident. *Id.*

The court signed the proposed Order, including that Form on May 26, 2020. APP588–APP605, Bankr. Dkt. 695.

## SUMMARY OF ARGUMENT

In moving for a bar date for abuse claims, BSA made clear in the proposed form of Approval Order that accompanied its motion and at the hearing on its motion, that it did not intend that claims filed via the Abuse Claim Form would be presumptively allowed. Rather, as BSA's counsel explained at the hearing, BSA intended the Form solely to be a mechanism for potential claimants to preserve their claims and for the parties to collect basic information regarding the claims for use in mediation.

The bankruptcy court, however, rejected both BSA's and Century's proposals for limiting language in its Approval Order, thereby converting what was a limited request for relief into an order allowing tort claimants to state a presumptively valid claim without alleging facts necessary to state such a claim using a form that was not designed for this purpose.

The bankruptcy code provides for such presumptive allowance only where a claimant has provided proof of his right to payment. While this standard may be

met where a debtor owes a sum certain to a creditor, establishing a debtors' legal liability for a tort claim—particularly a claim stemming from sexual abuse against an entity that is not itself the perpetrator—requires individualized proof and more detailed factual allegations than the Form approved here was designed to elicit.

In granting relief beyond that sought by BSA in its proposed Approval Order, the bankruptcy court lacked the benefit of full briefing focused on the consequences of it striking the limiting provisions sought by BSA and Century.  The number of claims threatens to multiply exponentially—with little connection to their merits—if claimants need provide only the sparsest of information to state a presumptively valid claim to a share of potentially millions of dollars in payouts.  The result will derail the orderly resolution of this case and overwhelm the district court with thousands or tens of thousands of tort claims.

The court erred as a matter of law by treating the Form as establishing presumptively valid claims absent that additional information.

## ARGUMENT

## I.   THE PROOF OF CLAIM IN THIS CASE WILL FAIL TO ESTABLISH SUFFICIENT FACTS TO BE GIVEN PRIMA FACIE VALIDITY

Section 502 of the Bankruptcy Code provides that "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed" unless there is an objection.  11 U.S.C. § 502(a).  The Bankruptcy Code defines a claim as a

"right to payment," or an enforceable obligation.  11 U.S.C. § 101(5)(A); *see Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998).  While the term "claim" may encompass any possible right to payment, an enforceable obligation must be identified for a claim to exist.  *Cohen*, 523 U.S. at 218; *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 353 (5th Cir. 2008).

Only "a claim that alleges facts *sufficient to support a legal liability to the claimant* satisfies the claimant's initial obligation to go forward."  *In re Allegheny, Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (emphasis added); Fed. R. Bankr. P. 3001(f).  The assertions in the filed claim must meet this standard of sufficiency to be considered prima facie valid under § 502(a).  *Allegheny*, 954 F.2d at 173*; see also* Fed. R. Bankr. P. 3001.  In other words, "the allegations of the proof of claim are taken as true," and *if* those "allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim."  *In re Holm*, 931 F.3d 620, 623 (3d Cir. 1991) (internal quotation marks omitted).

By contrast, where a proof of claim "does not adhere to the requirements of Rule 3001 by providing facts and documents necessary to support the claim, it is not entitled to the presumption of prima facie validity."  *In re Kincaid*, 388 B.R. 610, 614 (Bankr. E.D. Pa. 2008); *see In re Jorczak*, 314 B.R. 474, 481 (Bankr. D. Conn. 2004) ("If, however, the claimant fails to allege facts in the proof of claim

that are sufficient to support the claim, e.g., by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), the claim is not automatically disallowed; rather, it is merely deprived of any *prima facie* validity which it could otherwise have obtained.").

The relevant facts concerning the Proof of Claim Form here are undisputed: neither expert testified that the proposed Form would establish the elements of any sexual-abuse claim, and TCC's expert affirmatively testified that his goal was to produce a simple form, *not* one that would establish any legal elements. *See supra* at 7–8. BSA's Motion to Dismiss tacitly conceded this point, arguing that the Form was adequate solely because it was crafted to avoid "'intrusive' questions" and was tailored to the sensitivities of child-abuse victims. APP588, Dist. Ct. Dkt. 5, BSA Mot. to Dismiss at 15. The objective may be laudable, but the result is a Form that unambiguously—indeed, *indisputably*—fails to establish a prima facie cause of actionable abuse against BSA.

As both BSA and the insurers agreed below, that outcome could have been managed by including language in the Bar Date Order treating the Form as a claim-preservation and information-gathering device, rather than as a statement of a presumptively valid claim. The bankruptcy court, however, rejected both sides' proposals for such limiting language, thereby allowing tort claimants to state a presumptively valid claim without alleging facts necessary to state such a claim.

No claimant in any other civil litigation context—including those asserting sexual-abuse claims—receives such special pleading treatment.  And nothing in the Bankruptcy Code justifies such an exception for the pleading and substantive proof of these claims, or any others.  To the contrary, the substantive standards applicable to the claims is properly established solely by *state* law and cannot be supplanted by special bankruptcy standards.  *See In re USG Corp.*, 290 B.R. 223, 225 (Bankr. D. Del. 2003) ("An unbroken line of authority holds that state law claims remain governed by state law, even after the debtor invokes federal bankruptcy protection.").  Because a "claim against the bankruptcy estate 'will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy,'" *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n.66 (3d Cir. 2005) (quoting *United States v. Sanford*, 979 F.2d 1511, 1513 (11th Cir. 1992)), sexual-abuse and other tort claimants must be subjected to the same proof standards they would face outside of bankruptcy, even when such proof is intrusive or potentially embarrassing (matters that can be handled through confidentiality protocols as in any other civil litigation context).

According to the bankruptcy court, treating the Proof of Claim Form as only an information-gathering and claim-preservation device would impermissibly "alter the effects" that the Bankruptcy Code gives proofs of claim.  APP491, Bankr. Dkt. 675,  May 18, 2020 Hr'g Tr. at 70:2–6.  Just the opposite is true.

15

Under the Code, the Form can establish a presumptively valid claim *only* if it provides the information required to state a claim under applicable substantive law. *Combustion Eng'g*, 391 F.3d at 245 n.66.  It is accordingly *consistent* with, not anathema to, the Code to give the legally insufficient Form less than full presumptive validity.  Both parties' alternative procedures would have ensured that before ultimately being allowed, claims were supported by adequate information to satisfy each element.  The Code does not preclude that approach, but it does preclude the approach taken by the bankruptcy court.

While the Abuse Claim Form solicits information that may be sufficient for a tort claim against an actual abuser, it falls short of soliciting the type and range of information necessary to establish BSA's liability, as an organization, for the underlying conduct, let alone in each of the fifty states whose law may apply.[9] Among other things, none of the questions require that the claimant affirm either that BSA knew about the abuser or that the claimant has evidence of that knowledge.  In various jurisdictions, this omission would be fatal to a claim against BSA.  *See, e.g.*, *Boy 1 v. Boy Scouts of America*, 993 F. Supp. 2d 1367, 1369 (W.D. Wash. 2014); *Doe v. Boy Scouts of America*, 4 N.E.3d 550, 554 (Ill. App.

---

[9]  While the Proof of Claim Form asks more than thirty questions, the bulk of those solicit identifying information, the claimant's background, and establish the facts of the abuse.  APP600, Bankr. Dkt. 695-7 at 9.  These questions do not address the issue of whether and how BSA, breached a duty to the claimant.

Ct. 2014); *Gold Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*, 926 S.W.2d 287, 289 (Tex. 1996).

In *Boy 1 v. Boy Scouts of America*, the court granted the Boy Scouts' motion for summary judgment and dismissed the negligence claims brought by several former scouts against the BSA.  993 F. Supp. 2d at 1369.  In dismissing the claimants' direct liability negligence claims, the court held that the plaintiffs failed to establish the sort of "special relationship" with either the abuser or the victims that would give rise to an affirmative duty to prevent harm.  *Id.* at 1371–73. Specifically, the court explained that a duty to control a third party's actions only arises where there is "a definite, established and continuing relationship between the defendant and the third party" and "proof that *the defendant was aware of the tortfeaser's dangerous propensities*."  *Id.* at 1372.  This showing was necessary to establish BSA's liability, as under Washington law BSA's relationship to individual scouts has been held to be too tenuous to give rise to a "special protective relationship" that would establish BSA's duty here.  *Id.* (citing *N.K. v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 307 P.3d 730, 739 (Wash. Ct. App. 2013)); *see also Boy 1 v. Boy Scouts of America*, No. C10-1912-RSM, 2012 WL 12882006, at *4 (W.D. Wash. Jan. 17, 2012) (noting that, in contexts similar to the BSA's relationship to scouts, "Washington

courts have repeatedly emphasized that a duty only arises where there is both a special relationship and specific knowledge of the risk of harm").

In *Doe v. Boy Scouts of America*, a mother brought a negligence action against BSA and a Local Council of the BSA after her son was sexually abused by a former executive employee of the Local Council.  4 N.E.3d at 554.  The trial court granted summary judgment for the BSA and the Local Council, finding that the plaintiff failed to establish grounds for liability on, among other theories, negligent hiring and retention.  *Id.* at 553.  The court explained that, even if it assumed that the post-employment actions of the former employee were relevant, plaintiffs had pointed to nothing that the Local Council knew or should have known that would have made his later actions reasonably foreseeable.  *Id.* at 561.

In *Gold Spread Council, Inc. No. 562 of Boy Scouts of America v. Akins*, a scout who had been abused sued the BSA and the Local Council.  926 S.W.2d at 289.  The Texas Supreme Court considered whether BSA or its Local Council had a duty on which a negligence claim could be premised.  *Id*. at 289–90.  The court found that BSA, absent any knowledge of past claims of abuse by this scoutmaster, had "no duty to screen an adult volunteer about whom it had no knowledge and over whom it had no right of control."  *Id.*  With regard to the Local Council, the court imposed only a limited duty, premised on the information available to the council: "[*I*]*f GSC knew or should have known* that [the perpetrator] was peculiarly

18

likely to molest boys, it had a duty not to recommend him as a scoutmaster.  We impose no other duty on GSC than this."  *Id.* at 292 (emphasis added).

Elsewhere, a defendant's actual knowledge of the abuse, above and beyond mere knowledge of the perpetrator's predilection for such abuse, is a necessary element.  *See e.g.*, *Sapp v. The Roman Catholic Archbishop of Portland in Oregon*, No. CV 08-68-PK, 2008 WL 1849915, at *13 (D. Or. Apr. 22, 2008) (granting motion to dismiss negligence claims stemming from abuse that occurred 29 years before action was filed).  And claims against other organizations similarly situated to the Boy Scouts have likewise been held to require allegation and proof that the organization was aware of an individual's history of or predilection toward misconduct.  *See e.g., Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 163–64 (N.Y. Sup. Ct. 1997) (plaintiff failed to state a claim for negligent hiring as defendant diocese had no reason to know that priest was danger to children when he was hired).  And beyond direct negligence, there is also inconsistency among states on whether vicarious liability for employers attaches to torts involving sexual abuse.[10]

---

[10]  *See* Martha Chamallas, *Vicarious Liability in Torts: The Sex Exception*, 48 Val. U. L. Rev. 133 (2013) ("[W]hen it comes to sexual abuse and exploitation cases, tort law gives no crisp answer to the question of whether a business is vicariously liable for the sexual torts committed by its employees.  Instead, the cases are conflicting and confusing, with a decided tendency to rule against vicarious liability in the sexual misconduct context.").

The centrality of a defendant organization's knowledge of or notice about a particular individual to so many of the state cases brought against BSA and other similarly situated organizations demonstrates that the approved Proof of Claim Form is an inadequate to support the heavy, burden-shifting weight it was given by the bankruptcy court.  With this major element missing, the Form fails to elicit facts sufficient to support a legal liability as to BSA.  *See Allegheny*, 954 F.2d at 173.

Given the individualized nature of the proof required by a claimant, the questions asked in the Proof of Claim Form do not establish presumptive liability by the mere submission of the form.  To be sure, some questions in the Form might in some jurisdictions be deemed to go to whether and how BSA breached a duty to the claimant, but those questions solicit a narrative response, the answer to which could result in varying conclusions, including a conclusion of no liability for BSA. By striking the limiting language sought by BSA and the insurers from the approval order, the bankruptcy court opens the door to confusion and litigation over which submissions are to be deemed presumptively allowed.

## II.    ADJUDICATING MASS TORT CLAIMS IN BANKRUPTCIES INVOLVES UNIQUE RISKS THAT REQUIRE CAREFUL MANAGEMENT

Mass tort cases like this one present a dramatic risk of "overclaiming" that sharply underscores the need to gather adequate information before treating claims

as valid, either through the prima facie statement requirement, or through a phased process of gathering information and preserving claims, subject to a later evidentiary process.  "The problem of overclaiming inheres in any move from a tort system predicated on individualized proof toward a streamlined administrative regime."  Richard A. Nagreda, *Mass Torts in a World of Settlement* 150 (2007); *see In re Silica Products Liability Litig.*, 398 F. Supp. 2d 563, 571–72 (S.D. Tex. 2005); *In re Joint E. & S. Dists. Asbestos Litig.*, 237 F. Supp. 2d 297, 314–16 (E.D.N.Y. 2002) (influx of questionable claims required court to re-design claims process).  That risk is certainly manifest here.

Because of these risks, the Third Circuit has admonished courts to apply "careful and comprehensive scrutiny" in overseeing mass tort bankruptcies.  *In re Congoleum Corp.*, 426 F.3d 675, 693–94 (3d Cir. 2005).  Such close scrutiny is required, the Court explained, because the issues that arise in resolving mass tort bankruptcies "are similar to those that arise in class actions for personal injuries," where settlement presents serious risks that class members' interests may be compromised by "lawyers for the class who may, in derogation of their professional and fiduciary obligations, place their pecuniary self-interest ahead of that of the class."  *Id.*

The same problem is presented here.  After years of advertising by plaintiff firms for claims against BSA, there were 275 known claims pending in the tort

system when BSA filed for bankruptcy, and BSA was aware of 1,700 total. Bankr. Dkt. 16, ¶ 7. That number threatens to multiply exponentially—diluting recoveries on meritorious claims—if claimants need provide only the sparsest of information to state a presumptively valid claim to a share of potentially millions of dollars in payouts. *See* Deborah R. Hensler & Mark A. Peterson, *Understanding Mass Personal Injury Litigation*, Santa Monica, CA: RAND Corporation, 1995[11] ("Aggregation will be more appealing to attorneys with larger numbers of less valuable cases, who can use aggregation to resolve claims cheaply without having their worth tested.").

In the matter of weeks since the noticing period started, the TCC's counsel has represented to the bankruptcy court that the plaintiffs lawyers represented on the committee alone collected over 10,000 claims.[12] That represents an increase of more than 1,300 claims per week every week since the bar date order issued with the numbers accelerating as the proof of claim form is circulated.[13] This

---

[11]  https://www.rand.org/pubs/research_briefs/RB9021.html.

[12]  *See* APP654, Bankr. Dkt. 1006, July 9, 2020 Hr'g Tr. at 14:16–24 ("I can report to you that based on information from the attorneys who represent committee members, which excludes a whole universe of plaintiff lawyers, we are already over 10,000 claims. That is our constituency.").

[13]  For a discussion of how claims proliferate and multiply exponentially in mass tort cases, see generally Sara Randazzo & Jacob Bunge, *Inside the Mass-Tort Machine That Powers Thousands of Roundup Lawsuits*, Wall St. J., Nov. 25, 2019, https://www.wsj.com/articles/inside-the-mass-tort-machine-that-powers-thousands-of-roundup-lawsuits-11574700480.

astronomical increase in the number of claims makes it absolutely crucial that

BSA, its insurers, and legitimate claimants are able to properly vet these claims

and weed out those without merit.

Other bankruptcy courts have recognized the need for more detailed

information when mass tort claims are at issue.  *See In re A.H. Robins Co., Inc*.,

862 F.2d 1092 (4th Cir. 1988); *In re The Delaco Co.*, No. 04-10899 (CB) [Dkt.

196].  In *A.H. Robins*, the district court (sitting in bankruptcy) established a two-

step process by which claimants would first file a statement of intent to make a

certain type of claim along with their name and address, and then later would be

required to fill out a detailed questionnaire.  *Id.* at 1093.  The questionnaire

requested information related to the claim, such as dates of use of the product, the

type of injury alleged, and details about any medical attention sought.  *Id.*  The

Fourth Circuit upheld the district court's decision to disallow claimants who failed

to complete the questionnaire on the grounds that, without answers to the

questionnaire's more detailed inquiries, the "initial statement of intention to make

a claim would be insufficient as valid proof of claim."  *Id.* at 1096.  The same is

true here.

Similarly, the bankruptcy court in *Delaco* amended a Bar Date order to

require that personal injury and wrongful death claimants complete a

questionnaire, and set a separate bar date for receipt of the questionnaire.  *See*

APP704–APP715, Amended Order under 11 U.S.C. §§ 105 and 502 and Fed. R. Bankr. P. 2002(a)(7), 3001(a), and 9008 Requiring Personal Injury Claimants to File Questionnaires, *In re The Delaco Co.*, No. 04-10899 (CB) [Dkt. 196].  The seventeen-page questionnaire solicited detailed information about the claim, including detailed information about exposure, symptoms, and medical history (including family medical history).  APP716–APP734, Amended Order under 11 U.S.C. §§ 105 and 502 and Fed. R. Bankr. P. 2002(a)(7), 3001(a), and 9008 Requiring Personal Injury Claimants to File Questionnaires, *In re The Delaco Co.*, No. 04-10899 (CB), Exhibit [Dkt. 196-2].  Claimants were required to submit supporting documentation or, in the alternative, submit an explanation as to why no supporting documentation was available.  APP705, Amended Order under 11 U.S.C. §§ 105 and 502 and Fed. R. Bankr. P. 2002(a)(7), 3001(a), and 9008 Requiring Personal Injury Claimants to File Questionnaires, *In re The Delaco Co.*, No. 04-10899 (CB) [Dkt. 196].  The questionnaire was treated as part of the process of establishing a proof of the claims—even though a placeholder proof had been earlier filed, claims were barred for any claimant who did not fill out the questionnaire.

The Debtors here made clear at the May 18 hearing regarding the Bar Date Motion that they envisioned a similar process.  *See supra* 5, 8–9; APP467–APP468 Bankr. Dkt. 675, May 18, 2020 Hr'g Tr. at 46:4–47:16 ("We believe and it's

consistent with virtually every mass tort case that the plan of reorganization that is

ultimately negotiated in this case will provide a process for allowing abuse

survivor claims and liquidating abuse survivor claims that will either be set forth in

the plan itself or in the trust distribution procedures.").  Debtors' proposed

approach—*viz.*, claims would be collected for mediation purposes but not liquated

or allowed until a later screening process occurred—is only logical in a case of this

magnitude, where each claim will necessarily involve highly individualized facts

and widely varying levels of proof.[14]  Indeed, the only realistic way for Debtors

and the court to sort meritorious from non-meritorious claims in this case would be

to obtain more detailed information from claimants than the current Abuse Claim

Form requires.  The limitations proposed by BSA, Century, and Hartford to the

order approving the proof of claim were designed to allow for this additional

information-gathering process.[15]

---

[14]  In the only other mass tort case before Judge Silverstein, *In re Imerys*, No. 19-10289 (LSS), the allowance of individual tort claims are to be addressed post-petition through procedures adopted as part of the plan of reorganization.

[15]  A robust audit process for claims is typical in global settlements as a means of "identify[ing] and deter[ring] fraudulent patterns and practices."  S. Todd Brown, *How Long Is Forever This Time? The Broken Promise of Bankruptcy Trusts*, 61 Buff. L. Rev. 537, 569–70 (2013) ("As Kenneth Feinberg recently observed, 'anytime you establish a very generous public compensation program, it will trigger a certain amount of fraudulent activity.'  Every major claims resolution facility in recent history—including state-level workers compensation programs, the Black Lung Fund, the Katrina and Rita hurricane disaster relief programs, the 9/11 Victims Compensation Fund, and the Gulf

If tens of thousands of tort claims are presumptively allowed based on a check-the-box form, the only recourse would be to object to them individually in the bankruptcy.  As tort claims are entitled to a jury, the bankruptcy court lacks the ability to resolve such claims which would lead to their transfer to the District Court.  28 U.S.C. § 157(b)(5).  In denying the transfer of 2,400 tort cases from state courts to the district court associated with another recent mass tort bankruptcy, Judge Noreika held the transfer of many fewer tort claims than those already at issue here would overwhelm the District of Delaware:

> [T]he Court is not convinced how, if at all, the fixture of these cases here would benefit the bankruptcy proceeding and provide for a more efficient handling of Debtors' estate.  If anything, the transfer of these cases would grind the wheels of justice to a halt, as cases at all stages of development are fixed here and added to an already-busy docket.

*In re Imerys Talc Am., Inc.*, No. 19-MC-103 (MN), 2019 WL 3253366, at *8 (D. Del. July 19, 2019).

The court erred as a matter of law by treating the Form as establishing presumptively valid claims absent that additional information.

---

Coast Claims Facility, to name but a few—have experienced fraudulent claim submissions.").

## CONCLUSION

Appellants respectfully requests that the Court reverse the bar date order and remand with instructions that the bankruptcy court to issue a new order that does not grant prima facie validity to claims submitted via the proof of claim form.

Dated:  July 27, 2020                    Respectfully Submitted,

                                         By: */s/ Stamatios Stamoulis*
                                             Stamatios Stamoulis (#4606)

                                         STAMOULIS & WEINBLATT LLC
                                         800 N. West Street
                                         Third Floor
                                         Wilmington, DE  19801
                                         Telephone: (302) 999-1540
                                         Facsimile: (302) 762-1688

                                         O'MELVENY & MYERS LLP
                                         Jonathan Hacker (*pro hac vice*)
                                         1625 Eye Street, N.W.
                                         Washington, DC  20006
                                         Telephone: (202) 383-5300
                                         Facsimile: (202) 383-5414

                                         O'MELVENY & MYERS LLP
                                         Tancred Schiavoni (*pro hac vice*)
                                         Janine Panchok-Berry (*pro hac vice*)
                                         Andrew Kirschenbaum (*pro hac vice*)
                                         Times Square Tower
                                         7 Times Square
                                         New York, NY  10036-6537
                                         Telephone: (212) 326-2000
                                         Facsimile: (212) 326-2061

                                         *Counsel for Appellants Century*
                                         *Indemnity Company, as successor to CCI*
                                         *Insurance Company, as successor to*
                                         *Insurance Company of North America*
                                         *and Indemnity Insurance Company of*
                                         *North America, Westchester Fire*
                                         *Insurance Company and Westchester*
                                         *Surplus Lines Insurance Company*