IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, | : : : : | Chapter 11 Case No. 20-10343 (LSS) (Jointly Administered) |
| Debtors. | : : | |
| CENTURY INDEMNITY COMPANY, | : : | |
| Appellants, v. | : : : | Civ. No. 20-774-RGA |
| BOY SCOUTS OF AMERICA and DELAWARE BSA, LLC, | : : : : | |
| Appellees. | : : | |

**MEMORANDUM OPINION**

Jonathan Hacker, O'Melveny & Myers LLP, Washington, D.C.; Tancred Schiavoni, Janine Panchok-Berry, Andrew Kirschenbaum, O'Melveny & Myers LLP, New York, New York; Stamatios Stamoulis, Stamoulis & Weinblatt LLC, Wilmington, Delaware, attorneys for appellant, Century Indemnity Company.

Jessica C.K. Boelter, Sidley Austin LLP, New York, New York; Thomas A. Labuda, Michael C. Andolina, Matthew E. Linder, Sidley Austin LLP, Chicago, Illinois; Derek C. Abbott, Andrew R. Remming, Eric W. Moats, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware, attorneys for appellees, the Boy Scouts of America and Delaware BSA, LLC.

March 29, 2021

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before the Court is an appeal by Century Indemnity Company ("Century") from an Order of the Bankruptcy Court dated May 26, 2020, which set a Bar Date and established a form for filing Proofs of Claim for "Sexual Abuse Survivors. (D.I. 1-1, B.D.I. 695)[1] (the "Bar Date Order"). Boy Scouts of America and Delaware BSA, LLC (together, "BSA") have moved to dismiss the appeal on the basis that Century lacks appellate standing to challenge the Bar Date Order, that the Bar Date Order is not a final order, and that Century has failed to seek leave to appeal the interlocutory Bar Date Order, and that the appeal does not otherwise meet the standard to warrant immediate review under 28 U.S.C. § 1292(b). (D.I. 4, 5, 6). For the reasons set forth below, the appeal is dismissed.

## I.   BACKGROUND

BSA filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. BSA had been named "in numerous lawsuits related to historical acts of sexual abuse in its programs." (B.D.I. 4 at 3). BSA filed a motion requesting that the Bankruptcy Court (a) set a deadline for the filing of claims against BSA, (b) establish the form and manner of notice to be given to potential claimants, and (c) approve procedures for providing notice to abuse victims. (B.D.I. 18) (the "Bar Date Motion"). The Bar Date Motion noted the "critical importance" of receiving and analyzing abuse claims promptly so that the claims could be handled in an efficient and equitable manner. (*Id.* ¶¶ 10-11). Sexual abuse survivors shared this goal: both the committee for tort claimants and BSA agreed that a bar date was necessary to allow the parties "to understand the body of claims that are out there" in order to "proceed with respect to the mediation" and ultimate resolution of claims and distributions to claimants under a confirmed

---

[1] The docket of the chapter 11 cases, captioned *In re Boy Scouts of America*, No. 20-10343-LSS (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

plan of reorganization.  (B.D.I. 675, 5/18/2020 Hr'g Tr. at 64:14-24).  As part of the Bar Date Motion, BSA also proposed procedures for confidential submission of abuse claims.  (B.D.I. 18 ¶ 17, Exs. A, B-1, C-1, D).  BSA proposed to send notice by first class mail to more than one thousand known claimants, plus email notifications "anticipated to reach over 10 million potential claimants," including current and former Scouts, parents, and volunteers.  (B.D.I. 557-1 ¶ 3).  To further reach unknown claimants, BSA proposed to engage in an extensive media program, "estimated to reach approximately 95.9% of Men 50+ . . . , the primary target audience of potential claimants, with an average frequency of 6.5 times in the United States."  (B.D.I. 557-1 ¶ 4).  The total estimated cost of this notice plan was $6.8 million.  (B.D.I. 556 ¶ 5).

After months of negotiations and consultation with experts, BSA submitted a proposed claim form for abuse survivors that, in BSA's view, appropriately balanced the need for information with the need to be sensitive to victims of child sexual abuse.  The supplement to the Bar Date Motion included a proposed Abuse Survivor Proof of Claim Form (B.D.I. 557-9) ("Claim Form"), as well as proposed notices directed to abuse survivors (B.D.I. 557-6, 557-7, 557-8).  Appellant Century, one of BSA's insurers, objected to the proposed Claim Form on several bases.  Following additional negotiations and revisions to the proposed Claim Form, the Bankruptcy Court held an evidentiary hearing on the Bar Date Motion, which included expert testimony and oral argument on the remaining objections.

Century argued that the Claim Form should not be used as a proof of claim within the meaning of 11 U.S.C. § 502(a), which states that when a proof of claim is filed, it "is deemed allowed, unless a party in interest … objects."  Instead of constituting *prima facie* proof of a claim as § 502(a) provides, Century argued that submitted claim forms should be used solely "to preserve claims for voting purposes and to collect information for mediation."  (B.D.I. 675, 5/18/2020 Hr'g Tr. at 58:12-16).  The Bankruptcy Court rejected this position as contrary to the

terms of § 502(a): "I'm going to permit a proof of claim form to go out and the return of that proof of claim form has the effect that the code gives it. I am not going to alter the effects that the code gives it." (*Id.* at 70:2-6).

Century (and other insurers) also challenged the content of the proposed Claim Form, arguing that if the Claim Form were to be used as a proof of a sexual abuse survivor's claim against BSA, then the form would need "[f]ar more detailed questions and documentary support … to satisfy the requirements of the bankruptcy code." (B.D.I. 656 at 1, 6). Insurers asked, for example, that claimants be required to "identify by name and address, all the schools they attended to the best of their recollection, beginning with elementary school and continuing to secondary school and post-secondary school" (B.D.I. 675, 5/18/2020 Hr'g Tr. at 107:19-22; "all of their employment history dates … for each job and location" (*id*. at 108:16-18); and "if they suffered other unrelated forms of abuse, unrelated to Boy Scouts" (*id*. at 109:14-17). The Tort Claimants Committee's expert, Jon Conte, provided testimony that sexual abuse claimants could be harmed by being compelled to answer extensive narrative questions – which, Mr. Conte explained, would not even make it possible to discern whether a claim was valid or not – and opined that it was "much better" to request more limited information at the outset with further questioning later as appropriate. (*Id*. at 20:7-21, 24:12-25:12). The Bankruptcy Court, expressly crediting Mr. Conte's testimony, declined to order the additional questions sought by Century and the other insurers. (*Id*. at 121:12-122:9). The Bankruptcy Court explained, "I don't know that more information is better and I do have a concern that the more intrusive the information is … , it will discourage parties, abuse victims, from coming forward and we don't want to do that. So I'm not going to require that additional information." (*Id*. at 122:3-9). The Bankruptcy Court on May 26, 2020 issued the Bar Date Order, which approved the proposed Claim Form without Century's additional questions, as well as the related noticing procedures. (B.D.I. 695).

Century filed a timely notice of appeal with respect to the Bar Date Order on June 8, 2020. (D.I. 1). BSA moved to dismiss the appeal (D.I. 4), and the Motion to Dismiss is fully briefed. (D.I. 5, 12, 16). Additionally, the merits of the appeal are fully briefed. (D.I. 19, 21, 23). I did not hold oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.     JURISDICTION

This Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" and, "with leave of the court, from interlocutory orders and decrees[] of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a).

BSA argues that Century has no right of appeal because the Bar Date Order is interlocutory, and Century may appeal the interlocutory Bar Date Order only by filing a motion for leave to appeal, which, BSA argues, Century has not done. (D.I. 5 at 3). BSA further asserts, "All factors for determining whether an interlocutory bankruptcy court appeal is warranted militate against Century's appeal, and the appeal should be dismissed." (*Id.*) Century argues that the Bar Date Order is "arguably final" under the Third Circuit's pragmatic approach to the finality of bankruptcy court orders. (*See* D.I. 12 at 10-14)   Alternatively, Century seeks leave to appeal the Bar Date Order pursuant to 28 U.S.C. § 158(a)(3). (*Id.* at 14-18).

## III.    ANALYSIS

### A.     The Bar Date Order Is Not Final

"In bankruptcy matters [the Third Circuit has] consistently considered finality in a more pragmatic and less technical sense than in other matters and the concept, for purposes of appellate jurisdiction, should be viewed functionally." *In re Meyertech Corp.*, 831 F.2d 410, 414

5

(3d Cir. 1987). The parties agree that "the relevant Circuit precedent" (D.I. 12 at 11) here is the Third Circuit's *Energy Future Holdings* decision, which recently held that bar date orders were "not final and appealable" but instead "initiated a procedural sequence." *See In re Energy Future Holdings Corp.*, 949 F.3d 806, 817 (3d Cir. 2020); *see also In re Hooker Invs., Inc.*, 937 F.2d 833, 837 (2d Cir. 1991) ("Presenting a creditor with the choice of asserting or forgoing assertion of a claim cannot be said to constitute a final determination.")

Century argues that *Energy Future Holdings* does not necessarily compel the same result here, under the finality standards recently articulated by the U.S. Supreme Court in *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020). (D.I. 12 at 11). "In both *Energy Future Holdings* and *Ritzen Group*, the appellant waited until the end of the case to challenge an earlier ruling, and a question was raised in each case whether the appeal was forfeited by the delay. In *Ritzen*, the later appeal was held to be untimely; in *Energy Future Holdings*, the later appeal was allowed to proceed. By bringing its appeal now, Century seeks to resolve any dispute over timing without risking forfeiture of its appellate rights." (*Id.*)

In *Ritzen Group*, the Supreme Court explained that whereas finality in "civil litigation generally" is "normally limited to an order that resolves the entire case," thus requiring the appellant to "raise all claims of error in a single appeal," this "ordinary understanding of 'final decision' is not attuned to the distinctive character of bankruptcy litigation." 140 S. Ct. at 586. In contrast to other civil cases, bankruptcy cases often encompass multiple discrete disputes, and "controversies adjudicated during the life of a bankruptcy case may be linked, one dependent on the outcome of another." *Id*. at 587. Applying the usual finality rule thus "could have this untoward consequence: Reversal of a decision made early on could require the bankruptcy court to unravel later adjudications rendered in reliance on an earlier decision." *Id*. This key practical difference, Century argues, is reflected in the language of 28 U.S.C. § 158(a), which authorizes

an appeal as of right to the district court from "final judgments, orders, and decrees" entered by bankruptcy courts "in cases *and proceedings*." (D.I. 12 at 12) (emphasis added). "By providing for appeals from final decisions in bankruptcy 'proceedings,' as distinguished from bankruptcy 'cases,'" the Supreme Court explained, "Congress made orders in bankruptcy cases immediately appealable if they finally dispose of discrete disputes within the larger bankruptcy case." *Ritzen Group,* 140 S. Ct. at 587 (internal quotation marks and alterations omitted). Turning to the order at issue in that case – denial of relief from the automatic stay – the Court held such orders are final because they "dispose[] of a procedural unit anterior to, and separate from, claim-resolution proceedings." *Id*. at 589.

The Third Circuit in *Energy Future Holdings* summarized *Ritzen Group*'s analysis of bankruptcy finality. A ruling is final and appealable, the Third Circuit explained, when it resolves a proceeding that "'initiates a discrete procedural sequence, including notice and a hearing'; requires application of a 'statutory standard'; and does 'not occur as part of the adversary claims-adjudication process.'" *Energy Future Holdings*, 949 F.3d at 817 (quoting *Ritzen Group*, 140 S. Ct. at 589). Applying those standards to the bar date order in that case, the Third Circuit held that while the bar date motion did initiate a discrete procedural sequence, it did not satisfy the other two finality elements. First, it did not involve application of a "statutory standard." The bar date was challenged by purported representatives of unmanifested asbestos claimants who complained that discharging latent (and hence unknown) claims through application of a bar date violated due process. *Id*. at 814, 817. Second, it was "not anterior to and separate from" the adversary claims-adjudication process, but was instead "intertwined with" the adjudication of latent claims, since it dictated their denial. *Id*. at 817-18.

Century argues that, to the extent the differences between the Bar Date Order in this case and that in *Energy Future Holdings* are distinctions that matter under § 158(a)(1), Century must

7

appeal the Bar Date Order now or it will face the risk that its end of case appeal will be deemed untimely. I disagree that the cited differences between these two cases should lead to a different result. (*See* D.I. 12 at 13). Century argues that the Bar Date Order is "less intertwined with the adversary claims-adjudication process" than was the bar date order at issue in *Energy Future Holdings*. (D.I. 12 at 13) (citation omitted). As BSA correctly points out, however, in both cases, the bar date orders set a date by which claims were required to be submitted – a step integral to the claims-adjudication process. *Compare Energy Future Holdings*, 949 F.3d at 814. Century also argues that the Bankruptcy Court's approval of the Claim Form was "governed by a 'statutory standard,' *i.e.*, the requirements of [Bankruptcy] Code § 502(a) and Rule 3001(f)," (D.I. 12 at 13), such that a purely legal issue is presented. I disagree. Those provisions dictate the legal effect a proof of claim has for purposes of the claims-adjudication process, but they do not address what information must be included on a proof of claim form. *See In re marchFirst, Inc.*, 431 B.R. 436, 442 (Bankr. N.D. Ill. 2010) ("The Bankruptcy Code and Rules give no real guidance" regarding the content of a proof of claim). The Bankruptcy Court's Bar Date Order approving the Claim Form was a fact-based determination that a claimant's answers to the questions on the Claim Form will provide sufficient notice of the basis for sexual abuse claimants' claims in the context of this particular case. Just like the bar date order in *Energy Future Holdings*, that ruling was "not final and appealable." 949 F.3d at 818.

    **B.**   **Interlocutory Appeal Is Not Warranted**

Section 158(a) does not identify the standard district courts should use in deciding whether to grant an interlocutory appeal. "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011). Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at

issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). "[C]ertification of an interlocutory appeal is granted sparingly and only in exceptional circumstances." *Kaiser Grp. Int'l, Inc. v. Ostrava (In re Kaiser Grp. Int'l, Inc.),* 400 B.R. 140, 145 (D. Del. 2009). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

        **1.**      **Controlling Question of Law as to Which There Is Substantial Ground for Difference of Opinion**

"A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 at 755. "'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of expense to the litigants [has been] deemed … to be a highly relevant factor." *Id.* (internal citation omitted). The "controlling question of law" also must be one as to which there is "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). This calls for more than mere disagreement with the ruling of the bankruptcy court. To satisfy this standard, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd,* 141 F.3d 1154 (3d Cir. 1998); *see also Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 386 (M.D. Pa. 2007) (same). This factor is also met when "the bankruptcy court's decision is contrary to well-established law." *In re Marvel Entm't Grp., Inc.*, 209 B.R. 832, 837 (D. Del. 1997).

9

Century seeks leave to take an immediate appeal to argue that the Bankruptcy Court erred "in giving proofs of claim substantive, burden-shifting effect." (D.I. 12 at 1).  BSA asserts that the appeal does not present a controlling question of law and there is no ground for difference of opinion as to the correct legal standard or the plain meaning of the statute.  I agree with BSA.  As the Bankruptcy Court held, Century's position is squarely contradicted by the text of § 502(a), which dictates the treatment of proofs of claim.  "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a); *see In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (explaining that based on section 502 and Rule 3001, "a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward").  In rejecting Century's assertion that submitted Claim Forms should not be deemed *prima facie* proof of claims, the Bankruptcy Court applied the Bankruptcy Code.  (*See* B.D.I. 675, 5/18/2020 Hr'g Tr. at 70:2-6).  Indeed, any other ruling would have been reversible error.  *See In re Lampe*, 665 F.3d 506, 514 (3d Cir. 2011) (reversing a bankruptcy court order that a "proof of claim was not entitled to prima facie validity"). Century cites no case permitting departure from the statutory mandate regarding the legal effect, or casting "genuine doubt as to the correct legal standard." *Hulmes*, 936 F. Supp. at 208.

Century thus shifts to arguing that the real question here is "whether the Form is legally adequate." (D.I. 12 at 15).  In other words, Century seeks to appeal the Bankruptcy Court's finding that the approximately twenty-five questions on the twelve-page Claim Form would provide "'fair notice of the conduct, transaction, and occurrences that form the basis of the claim.'" *Lampe,* 665 F.3d at 514-15 (quoting *In re O'Brien*, 440 B.R. 654, 662 (Bankr. E.D. Pa. 2010)).  The Bankruptcy Court's ruling as to the proposed additional questions was a factual determination, based in part on Mr. Conte's expert testimony, that (1) the questions included in

10

BSA's proposed Claim Form provided sufficient information; and (2) the additional questions proposed by Century were not "relevant" to assessing the claims and were outweighed by the potential harm that such "intrusive" questions could cause survivors of child sexual abuse. (B.D.I. 675, 5/18/2020 Hr'g Tr. at 121:12-122:9). The record reflects that this particularized document was heavily vetted, revised, and tailored to meet the specific needs of the constituencies before the Bankruptcy Court and the sensitivities related to victims of sexual abuse. This factual, case-specific question – what must the Claim Form contain to elicit sufficient relevant information without unnecessarily burdening potential claimants – was based on the nature of the sexual abuse claims at issue in this bankruptcy proceeding. Based on the foregoing, I cannot conclude that the appeal presents a controlling question of law. Rather, the ruling is based on the Bankruptcy Court's factual findings and its exercise of discretion in weighing competing interests of the various constituencies. *See, e.g., In re Weiand Auto. Indus.*, 612 B.R. 824, 850 (Bankr. D. Del. 2020); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 613 (Bankr. D. Del. 2006); *In re MK Lombard Grp. I, Ltd.*, 301 B.R. 812, 816 (Bankr. E.D. Pa. 2003).

The record reflects that the Claim Form contains approximately twenty-five questions regarding, among other things, the date, location, and nature of the abuse; the harm suffered; the identity of the perpetrator; the context in which the abuse occurred; the connection between the claimant and Scouting; who at BSA was aware of the abuse; who else knew about the sexual abuse; and the claimant's alleged damages.[2] (B.D.I. 695-7). Although Century asserts that the Claim Form does not require information going to "all the elements of a claim" (D.I. 12 at 15),

---

[2] Compare this to Official Form 410, published by the U.S. court system, which the Committee Notes state "applies in all cases." Form available at https://www.uscourts.gov/sites/default/files/form_b_410_0.pdf; Committee Notes available at https://www.uscourts.gov/sites/default/files/form_b410_cn.pdf. That three-page form includes six questions as to the nature and amount of the claim (Questions 7-12).

11

as BSA correctly points out, Century nowhere identifies any element of any claim that is not addressed by the Claim Form. Century may disagree with the Bankruptcy Court's finding that the detailed information in the Claim Form is "more than sufficient," but appeal of that ruling does not present a controlling question of law. (B.D.I. 675, 5/18/2020 Hr'g Tr. at 121:25-122:8).

        **2.    Whether Immediate Appeal Will Materially Advance Termination of the Litigation**

Denial of a motion for leave to appeal is appropriate if "an immediate appeal of one or all of the[] issues would only promote piecemeal determination of the questions raised in the adversary action and would likely create unnecessary delay." *Id*. (internal quotation marks omitted). The notice procedures set forth in the Bar Date Order are complete, and the Claim Form that Century challenges has been sent to millions of potential claimants. (*See* D.I. 6). Distribution of a different Claim Form risks imposing massive delay and would require much of the $6.8 million cost of the original notice to be incurred a second time. Century argues that it does not seek to modify the Claim Form to include its preferred questions or create any unnecessary delay in the administration of the bankruptcy estate. (*See* D.I. 12. at 1). Rather, Century requests "a simple order that the claims submitted through the Form approved in the Order will not be considered prima facie valid." (*Id*.) According to Century, "The only alternative is to leave the issue for appeal at the end of the case, at which point, if reviewing courts agree with Century, the entire bankruptcy case may need to be unwound to ensure proper treatment of valid sexual-abuse claims." (*Id*. at 17).

BSA argues that such an order is directly foreclosed by § 502(a) and Third Circuit law, *Lampe*, 665 F.3d at 514, and that the relief Century asks for is not nearly so "simple" as it suggests. "If this Court ordered that any claim submitted using the Claim Form did not have the

12

legal effect of a proof of claim, then claimants who relied on the Claim Form would have failed to submit a proof of claim before the bar date – and could thus be prevented from participating in BSA's reorganization." (D.I. 16 at 9). *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995). When Century raised this request, the Bankruptcy Court repeatedly questioned how it could possibly work for the Claim Form not to be deemed a proof of claim, with the legal effect that the code assigns to proofs of claim. (B.D.I. 675, 5/18/2020 Hr'g Tr. at 63:4-6 ("How do claimants vote on the plan if they haven't filed a proof of claim?"); *id*. at 60:17-20 (similar)). BSA argues that Century had no answer then, it has no answer now, and the appeal should be dismissed. I agree with BSA. Century did not seek a stay of the Bar Date Order, and to the extent Century seeks to disrupt the process already in place, it will not only prolong the litigation, but unnecessarily burden sexual abuse victims by requiring them to submit additional materials in order to establish a prima facie claim. I find no basis to conclude that immediate appeal of this issue would advance the termination of the litigation or the underlying Chapter 11 cases.

### 3. Whether Exceptional Circumstances Justify Immediate Appeal

Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until after the entry of final judgment, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist. *See In re Advanced Marketing Services, Inc.*, 2008 WL 5680878 (D. Del. April 3, 2008). "Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *AE Liquidation*, 451 B.R. at 349 (internal quotation marks omitted).

There is no reason for me to reach this issue, but if I did, I would conclude that Century's argument on this issue is just as weak as it has been on the other issues. Century has not

identified any exceptional circumstances. (*See* D.I. 12). Century argues, "In the absence of any meaningful threshold clarification of the claims, the parties and the court will face an enormous burden of factual inquiry even to identify which claims have any facial legitimacy, let alone delve further into claims that at least pass an initial screen for allegation of facts establishing a prima facie case." (*See id.* at 17-18). The Court is not persuaded that exceptional circumstances are demonstrated by Century's preference that the Claim Form include the additional questions that it proposed — questions the Bankruptcy Court considered and rejected as not "relevant" and overly "intrusive." Century concedes that the Bar Date Order does not "determine the outcome of any particular claim" (D.I. 12 at 13), and that Century "may still challenge submitted claims" and "discover all relevant facts" before any claims are resolved (*id.* at 9). Century has failed to point to "any circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review." *In re Magic Rests., Inc.*, 202 B.R. 24, 26-27 (D. Del. 1996). While this particular bankruptcy case will surely require the navigation of extraordinary circumstances, the Bar Date Order does not.

## IV.  CONCLUSION

The Bar Date Order is interlocutory and does not otherwise meet the standard warranting immediate review under 28 U.S.C. § 1292(b).[3] A separate order dismissing the appeal will be entered.

---

[3] Because the Court has determined that the Bar Date Order is interlocutory and does not otherwise meet the standard to warrant immediate review under 28 U.S.C. § 1292(b), the Court need not consider BSA's additional argument that Century lacks appellate standing to challenge the Bar Date Order.